NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1839

THE STATE OF OHIO, APPELLANT, *v.* ROMERO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Romero,* Slip Opinion No. 2019-Ohio-1839.]

*Criminal law—Motion to withdraw a guilty plea—Ineffective assistance of counsel arising from counsel's alleged failure to advise a noncitizen client of immigration consequences of entering a guilty plea—Trial court's advisement under R.C. 2943.031(A) that a guilty plea may have the consequence of deportation does not replace counsel's duty to advise a client of the consequences of the plea.*

(No. 2017-0915—Submitted January 29, 2019—Decided May 15, 2019.)

APPEAL from the Court of Appeals for Stark County, No. 2016CA00201, 2017-Ohio-2950.

_____

FRENCH, J.

{¶ 1} In this appeal, we address the standard for ruling on a criminal defendant's motion to withdraw a guilty plea when the motion is based on a claim

of ineffective assistance of counsel arising from an attorney's alleged failure to advise his noncitizen client of the immigration consequences of entering the plea.

{¶ 2} Appellee, Carlos Romero, a lawful permanent resident of the United States, has been ordered to appear for deportation proceedings as a result of entering guilty pleas to charges of drug trafficking and possession. Romero seeks to withdraw his guilty pleas based on a claim of ineffective assistance of counsel. The trial court denied Romero's motion, but the Fifth District Court of Appeals reversed. Appellant, the State of Ohio, appeals.

{¶ 3} We affirm the judgment of the court of appeals, with a caveat. We agree with the Fifth District that the trial court erred in denying Romero's motion without considering the two-prong test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applied in the immigration context in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We conclude, however, that the Fifth District's remand order to the trial court for a full evidentiary hearing is premature. We instead remand the matter to the trial court to evaluate Romero's motion and supporting materials in accordance with the legal framework that we set out in this opinion. We therefore affirm the judgment of the court of appeals and remand the matter to the trial court for application of the proper standard.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 4} Carlos Romero, a native of Honduras, has been a lawful permanent resident of the United States since 1998. He has five children who were born in the United States and whose ages ranged from one year old to 18 years old at the time of the relevant trial court proceedings.

{¶ 5} In March 2016, the Stark County Grand Jury indicted Romero on felony charges of possession of marijuana, trafficking in marijuana, and possession of cocaine.

**{¶ 6}** In June 2016, Romero appeared with counsel to enter his pleas to the charges. At the plea hearing, the trial court asked Romero whether he was a United States citizen, and Romero answered no. The court then advised Romero, as R.C. 2943.031(A) requires, of the possible immigration consequences of entering a guilty plea:

> THE COURT: If you are not a citizen of the United States, you are going to be advised and you are hereby advised that a conviction of the offense to which you are pleading guilty may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
>
> Do you understand that, sir?
>
> DEFENDANT ROMERO: Yes, ma'am.
>
> THE COURT: And with that in mind, are you still prepared to proceed?
>
> DEFENDANT ROMERO: Yes, ma'am.

**{¶ 7}** The court confirmed that Romero had had a chance to meet with his counsel to discuss his Crim.R. 11 plea form before signing it and that he had no unanswered questions about the form. Romero stated that he was satisfied with the quality of legal services that counsel had provided. Near the conclusion of the Crim.R. 11 plea colloquy, the court again asked Romero if he had any questions before entering his pleas. Romero had a question about his ability to work, but he did not bring up any immigration-related questions. After conferring off the record with his counsel, Romero pleaded guilty to all three counts.

**{¶ 8}** The court sentenced Romero to three years of community-control sanctions and 100 hours of community service and suspended his driver's license for six months.

**{¶ 9}** According to Romero, in July 2016, United States Immigration and Customs Enforcement detained him and served him with a notice to appear in federal immigration court for removal proceedings; his hearing was scheduled for October 2016. The notice informed Romero that he was subject to deportation from the United States under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, codified in 8 U.S.C. 1227(a)(2)(A)(iii) and 8 U.S.C. 1227(a)(2)(B)(i). Romero's convictions were for an aggravated felony and a violation of law related to a controlled substance, which made him subject to deportation. *See id.* (noncitizen "shall, upon order of the Attorney General, be removed" if convicted of an "aggravated felony" or violation of law "relating to a controlled substance").

**{¶ 10}** Four days before his scheduled removal hearing, Romero filed an emergency motion to withdraw his guilty pleas and to vacate the judgment of conviction in the trial court, claiming ineffective assistance of counsel because his attorney had failed to advise him of the immigration consequences of his pleas. The court denied the motion. The judge referred to the plea-hearing transcript, noted that she had read to Romero the advisement in R.C. 2943.031(A), and concluded that Romero understood the consequences of deportation and still chose to proceed with the guilty pleas. Accordingly, the trial court found that Romero had entered his pleas knowingly, voluntarily, and intelligently, and it denied his motion.

**{¶ 11}** The Fifth District Court of Appeals unanimously reversed the trial court's judgment. The court of appeals noted that Romero's ineffective-assistance claim required a two-prong analysis: whether counsel's performance was deficient and whether counsel's ineffectiveness was prejudicial to Romero. The court concluded that the trial court erred by denying Romero's motion without deciding

4

whether counsel properly advised Romero and by relying on its compliance with R.C. 2943.031(A) to dispose of the motion. The court reversed and remanded the matter to the trial court to conduct a hearing.

{¶ 12} We accepted the state's discretionary appeal, 151 Ohio St.3d 1502, 2018-Ohio-365, 90 N.E.3d 945, which presents the following proposition of law:

A trial court does not abuse its discretion in overruling a motion to withdraw guilty plea pursuant to Crim.R. 32.1 when the trial court has fully complied with the colloquy requirements of Crim.R. 11 and with the advisement requirements of R.C. 2943.031 regarding the consequences of a guilty plea on a defendant's immigration status.

## ANALYSIS

{¶ 13} Romero asks to withdraw his guilty pleas pursuant to Crim.R. 32.1, which provides that a trial court may grant a defendant's postsentence motion to withdraw a guilty plea only to correct a manifest injustice. A defendant bears the burden of establishing the existence of manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard. *Id.* at paragraph two of the syllabus; *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32.

### Ineffective-assistance claims under *Strickland* and *Padilla*

{¶ 14} The Sixth Amendment to the United States Constitution guarantees a defendant the effective assistance of counsel at " 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, __ U.S. __, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S.

52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). When a defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test set out in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Hill* at 58 (applying *Strickland* to guilty pleas); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992) (same).

{¶ 15} First, the defendant must show that counsel's performance was deficient. *Strickland* at 687; *Xie* at 524. When an attorney's noncitizen client is considering a plea, the United States Supreme Court has held that "counsel must inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473, 176 L.Ed.2d 284. Given the grave consequences of deportation, an ineffective-assistance claim is not limited to affirmative misadvice or false information. *Id.* at 369-371. The failure to give any advice at all about possible deportation consequences satisfies the first prong of *Strickland*. *Id.* "The severity of deportation * * * only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id*. at 373-374.

{¶ 16} Second, the defendant must demonstrate prejudice resulting from counsel's deficient performance. *Strickland* at 687. The defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* at 59; *Xie* at 524.

**The trial court applied the wrong legal analysis**

{¶ 17} In this case, the trial court did not examine Romero's ineffective-assistance claim under either prong of *Strickland*. Rather, the judge noted that she had advised Romero, in accordance with R.C. 2943.031(A), of the possible immigration consequences of his pleas, that she had engaged in a lengthy discussion with Romero about his Crim.R. 11 plea form, and that Romero had not expressed any dissatisfaction about his attorney. The court then concluded that Romero had entered his pleas knowingly, voluntarily, and intelligently. We conclude that the

trial court applied the wrong legal analysis to evaluate Romero's ineffective-assistance claim.

{¶ 18} As the United States Supreme Court has explained, an inquiry into whether a defendant entered his plea knowingly and voluntarily "is not the correct means by which to address a claim of ineffective assistance of counsel." *Lafler*, 566 U.S. at 173, 132 S.Ct. 1376, 182 L.Ed.2d 398. A court's duty to ensure that pleas are entered knowingly and voluntarily arises from the constitutional guarantee of due process. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir.2012). By contrast, counsel's duty to provide competent advice during plea proceedings arises from a separate constitutional guarantee—the Sixth Amendment right to counsel. *Missouri v. Frye*, 566 U.S. 134, 141, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A knowing and voluntary plea therefore does not supersede defense counsel's errors. *Id.* "It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy." *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir.2014). When, as here, the defendant asserts a claim of ineffective assistance of *counsel*, the court must focus on *counsel's* deficient performance and the prejudice arising from that deficiency.

{¶ 19} The trial court's advisement under R.C. 2943.031(A) also does not cure an attorney's failure to advise his client of the immigration consequences of a guilty plea. R.C. 2943.031(A) requires the trial court to provide the following advisement prior to accepting a defendant's guilty or no-contest plea to a felony or misdemeanor other than a minor misdemeanor:

"If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences

of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

{¶ 20} The advisement in R.C. 2943.031(A) warns defendants that "pleading guilty *may* have the consequence[ ] of deportation." (Emphasis added.) But that generalized warning does not replace counsel's duty to advise his client of the consequences of his guilty plea, as *Padilla* instructs. "Warnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first *Strickland* prong." *United States v. Kayode*, 777 F.3d 719, 728 (5th Cir.2014); *see also State v. Sow*, 10th Dist. Franklin No. 17AP-772, 2018-Ohio-4186, ¶ 14 ("the attorney's breach of duty is not cured by the trial court's compliance with R.C. 2943.031").

{¶ 21} As we explain further below, judicial advisements may be relevant to a determination of prejudice under the second prong of *Strickland*. The trial court must first examine, however, whether Romero's counsel fulfilled his duty under the Sixth Amendment to inform his client whether his guilty pleas carry a risk of deportation. *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473, 176 L.Ed.2d 284. Because the trial court failed to make this inquiry and instead relied on its compliance with R.C. 2943.031(A) and Crim.R. 11 to deny Romero's motion to withdraw his pleas, we conclude that the trial court abused its discretion.

{¶ 22} We therefore remand this matter to the trial court to evaluate Romero's ineffective-assistance claim under the two-prong test set out in *Strickland*. We turn, then, to the factors the trial court should consider on remand.

**The deficient-performance prong**

{¶ 23} Under the first prong of *Strickland*, the trial court must consider whether Romero's counsel satisfied his duty to advise his client regarding the risk of deportation. *See Padilla* at 367. "[W]hen the deportation consequence is truly clear, * * * the duty to give correct advice is equally clear." *Id*. at 369.

**{¶ 24}** In *Padilla*, for example, the Supreme Court found that the terms of the relevant statute were "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id*. at 368. To meet his advice obligation, Padilla's counsel could have determined that Padilla's plea would make him eligible for deportation simply by reading the statute, "which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id*.

**{¶ 25}** Instead of providing straightforward advice, however, Padilla's counsel gave him false assurances that a conviction would not lead to deportation. *Id*. These circumstances led the court to conclude that "[t]his is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id*. at 368-369.

**{¶ 26}** To be sure, immigration law can be complex, and the deportation consequences of a particular plea will not always be so clear. In those circumstances, counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. at 369.

**{¶ 27}** We recognize that the *Padilla*—and now, *Romero*—standard requires defense counsel to understand the immigration consequences of a guilty plea. But this duty is no different from the duty that defense counsel must adhere to in other areas of criminal law. The *Strickland* standard remains one of reasonableness: "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

### The prejudice prong

{¶ 28} Under the second prong of *Strickland*, Romero must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203. Romero must do more than present "*post hoc* assertions * * * about how he would have pleaded but for his attorney's deficiencies." *Lee*, __ U.S. at __, 137 S.Ct. at 1967, 198 L.Ed.2d 476. The trial court should look to contemporaneous evidence that substantiates Romero's statements. *Id.*

{¶ 29} In assessing whether it would be rational for a defendant to go to trial instead of pleading guilty, the court should consider the totality of circumstances. *Id.* at ___, 137 S.Ct. at 1966. The United States Supreme Court recently addressed some of the factors relevant to the reasonableness of the defendant's decisionmaking. *Id.* at ___, 137 S.Ct. at 1966-1969. *See also State v. Khoshknabi*, 2018-Ohio-1752, 111 N.E.3d 813 (8th Dist.) (applying *Lee* to evaluate prejudice); *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 51 (2d Dist.) (evaluating prejudice before *Lee*). As set out in *Lee*, the court's evaluation of prejudice can include, but is not limited to, the following factors.

{¶ 30} *The consequences of going to trial.* To prevail under the prejudice prong, a defendant need not show that he would have been better off going to trial. *Lee* at ___, 137 S.Ct. at 1965. While a defendant without any viable defense "will rarely be able to show prejudice" from accepting a plea agreement, the United States Supreme Court declined to adopt a "*per se* rule" that a defendant with no viable defense at trial cannot show prejudice. *Id.* at ___, 137 S.Ct. at 1966. The reasonableness inquiry focuses on the defendant's perspective. *Id.* To a defendant facing the dire consequence of likely deportation, "even the smallest chance of success at trial may look attractive." *Id.*

{¶ 31} *The importance that the defendant placed on avoiding deportation.* In *Lee*, the court noted that the defendant repeatedly asked his attorney about the

10

risk of deportation, showing that deportation was the determinative issue in the defendant's decision whether to accept a plea deal. *See Lee*, ___ U.S. at ___, 137 S.Ct. at 1967-1968, 198 L.Ed.2d 476. These factors, among others, demonstrated a reasonable probability that the defendant would have rejected the plea had he known that it would lead to mandatory deportation. *Id.* at ___, 137 S.Ct. at 1967. *See also Khoshknabi* at ¶ 41-42 (record showed that defendant and counsel discussed immigration issues before the plea hearing and that deportation was a serious concern for defendant).

{¶ 32} *The defendant's connections to the United States.* A defendant with strong connections and significant familial ties to the United States would reasonably risk going to trial instead of pleading guilty and facing certain deportation. *See Lee* at ___, 137 S.Ct. at 1968; *Akinsade*, 686 F.3d at 255-256.

{¶ 33} *Judicial advisement of immigration consequences.* As we explained earlier, a court's advisement under R.C. 2943.031(A) does not cure counsel's deficient performance under the first *Strickland* prong. But a judicial advisement about the immigration consequences of the defendant's plea may weigh against a finding of prejudice. *See State v. Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 29 (10th Dist.) (collecting cases in which courts found no prejudice because a trial court went beyond the R.C. 2943.031(A) advisement to warn a defendant of deportation consequences); *Kayode*, 777 F.3d at 729 (record weighed against finding of prejudice when judge asked defendant three times if he understood that deportation could result from pleading guilty). *Contrast Lee* at ___, 137 S.Ct. at 1968, fn. 4 (judge's warnings during plea colloquy did not cure the prejudice resulting from counsel's erroneous advice); *Akinsade* at 254 (court's "general and equivocal admonishment is insufficient to correct counsel's affirmative misadvice" about deportation).

{¶ 34} From these and other factors present in a given case, the trial court will determine whether the totality of circumstances supports a finding that

counsel's performance was deficient, and if so, whether the deficient performance was prejudicial to the defendant. The credibility and weight of the defendant's assertions in support of a motion to withdraw a plea and the decision as to whether to hold a hearing are matters entrusted to the sound discretion of the trial court. *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324; *Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, at ¶ 56.

## CONCLUSION

{¶ 35} We conclude that the trial court abused its discretion by denying Romero's motion to withdraw his guilty pleas without considering the two-prong test for ineffective assistance of counsel established in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. We affirm the judgment of the court of appeals, and we remand the matter to the trial court for application of the proper standard.

Judgment affirmed<br>and cause remanded.

O'CONNOR, C.J., and FISCHER, J., concur.

DONNELLY, J., concurs in judgment only, with an opinion.

STEWART, J., concurs in judgment only, with an opinion.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**DONNELLY, J., concurring in judgment only.**

{¶ 36} In *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), paragraph one of the syllabus, this court held that "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie* involved a motion to withdraw a guilty plea prior to sentencing, but in a case in which the motion to withdraw a guilty plea was filed years after sentencing, *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 51, this court stated that "*Xie* stands for the proposition that, unless it is clear that denial of the motion is warranted, a trial court should hold a hearing."

{¶ 37} In this case, the issue is whether the trial court abused its discretion when it refused to allow appellee, Carlos Romero, to withdraw his plea. I believe that a full evidentiary hearing is necessary and appropriate because of the importance of developing a record that can "be examined by a reviewing court to determine whether [the] trial court properly exercised its discretion in ruling on a motion to withdraw a plea." Id.

{¶ 38} Accordingly, I concur in judgment only. I would affirm the judgment of the court of appeals without adding a caveat.

_____

**STEWART, J., concurring in judgment only.**

{¶ 39} Appellee Carlos Romero's claim that his trial counsel failed to advise him about the deportation consequences of his plea is supported by the facts surrounding his plea and his own affidavit; therefore, I believe that this case warrants an evidentiary hearing to determine whether proper immigration advice from counsel was ever given, and if not, whether Romero was prejudiced by counsel's failure to advise.

{¶ 40} In postconviction proceedings, including those involving motions to withdraw guilty pleas, it is generally understood that trial courts should hold evidentiary hearings when the evidence and operative facts support the substantive claims behind the motion. *See*, *e.g.*, *State v. Lopez*, 10th Dist. Franklin No. 16AP-478, 2017-Ohio-4048, ¶ 25-26; *State v. Zimmerman*, 11th Dist. Geauga No. 2013-G-3146, 2014-Ohio-1152, ¶ 14. The facts of this case support Romero's ineffective-assistance-of-counsel claim. Just seven weeks after his arraignment, Romero pleaded guilty to all three felony charges in the indictment without the benefit of any plea bargaining or negotiations with the state. Thereafter, Romero was sentenced to a nonresidential term of community control, not to a prison sentence, a penalty that the court could have imposed.

**{¶ 41}** The fact that Romero pleaded guilty to the indictment, when he would have faced the same penalties if he had exercised his right to raise defenses and cross-examine witnesses at trial, tends to support Romero's contention that he was not advised by counsel that he would be deported if convicted. Quite simply, there was no benefit to Romero in pleading guilty instead of going to trial.

**{¶ 42}** Similarly, Romero's sentence to community control, rather than prison, shows that with the primary concern underlining Crim.R. 32.1's "manifest injustice" standard for granting a postsentence motion to withdraw a plea is not present. Romero did not plead guilty to test the potential punishment and then ask to withdraw his pleas because the sentence was too harsh.[1] *See State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977) (the manifest-injustice standard "seeks to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment"); *State v. Caraballo*, 17 Ohio St.3d 66, 67, 477 N.E.2d 627 (1985). Here, Romero received a relatively lenient sentence that he is willing to forgo in order to withdraw his plea. This case is therefore different from a case in which a defendant receives a severe sentence and then asks to withdraw his plea.

**{¶ 43}** Further, the transcript of the plea proceeding shows that Romero's original counsel was not present when he entered his pleas but that a different attorney was standing in for his counsel. It is unclear whether Romero had any chance before the proceeding to discuss his plea and have his questions answered by either his original counsel or stand-in counsel. In fact, the transcript of the plea

---

[1] Although not raised in this appeal, a question might arise whether the manifest-injustice standard should apply at all when a postsentence motion to withdraw alleges that the standards set forth in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), were violated. *Padilla* allows a defendant to move to withdraw a plea based on counsel's failure to advise the defendant of the immigration consequences associated with a conviction. The question raised by the failure to advise of immigration consequences has very little, if anything, to do with the ultimate sentence imposed. Notably, the Ohio General Assembly, in R.C. 2943.031, does not require that the manifest-injustice standard be met when a postsentence motion alleges a trial court failed to advise a defendant of immigration consequences, because of the "serious consequences of a criminal conviction on a noncitizen's status in this country." *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 26.

14

proceeding shows that Romero's primary concern during the sentencing hearing was whether he would be able to continue working after his conviction. It is unlikely that this would be his primary concern had he been advised that entering a guilty plea to the types of offenses he was charged with would result in mandatory deportation from the United States—especially in light of the fact that he had lived as a lawful permanent resident of the United States for 20 years and had four minor children who also lived here. Because the facts of this case support the claims asserted in Romero's affidavit, I would uphold the judgment of the Fifth District Court of Appeals and remand for an evidentiary hearing on the motion.

_____

**DEWINE, J., dissenting.**

{¶ 44} Boiled down to its essence, this case presents a simple question: did Carlos Romero's affidavit entitle him to an evidentiary hearing on his motion to withdraw his pleas? The trial court said no; the court of appeals said yes. We accepted the case, presumably to answer the question.

{¶ 45} But instead of answering the question, the plurality provides an attenuated discussion of the law, then punts the case back to the trial court. What the plurality says is interesting and might even prove marginally useful to the trial court. It would be a lot more useful, though, if the court would simply decide the case in front of it.

{¶ 46} What the trial court really needs to know is whether Romero's submission requires an evidentiary hearing. And what other trial courts in the state need to know is what type of showing is sufficient to require an evidentiary hearing. The best way to assist the trial court and other courts confronted with these kinds of questions is to tell them whether what Romero has submitted is enough—that is, answer the question whether Romero has made a sufficient showing of prejudice to require an evidentiary hearing.

**{¶ 47}** The plurality resists answering this question, saying that "[t]he credibility and weight of [a] defendant's assertions in support of a motion to withdraw a plea and the decision as to whether to hold a hearing are matters entrusted to the sound discretion of the trial court." Plurality opinion at ¶ 34. But in doing so, it overlooks the threshold requirement that before an evidentiary hearing is required on a motion to withdraw a guilty plea, a defendant must " 'submit evidentiary documents containing sufficient operative facts to demonstrate' " an entitlement to relief. *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983), quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus; *see also State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. In my view, the trial court did not err in denying the motion to withdraw the guilty pleas without a hearing, because even if one were to accept everything that Romero said in his affidavit as true, it does not establish his entitlement to withdraw his pleas.

**{¶ 48}** Here's what Romero's affidavit says:

- That he is not a United States citizen;

- That he has five children, ages 18, 9, 8, 3, and 1;

- That "when he was arrested, he was not knowledgeable about the criminal justice system or the ramifications of a guilty plea on his immigration status";

- That his attorney never advised him of the immigration consequences of his pleas, "most importantly, that he would be immediately deported";

- That "there was insufficient evidence to convict him of the charges against him, however his attorney at the time advised him that pleading guilty under the circumstances was in his best interest";

- That based on his attorney's advice, he entered guilty pleas;

- That "had he known his guilty pleas would lead to his automatic deportation, he would have been able to provide a defense to the charges brought against him at a trial of the matter";

- That he "did not understand the consequences of his plea until he was detained by ICE and place[d] in removal proceedings."

{¶ 49} To be entitled to an evidentiary hearing, Romero needed to set forth operative facts meeting the two-part *Strickland* test: that his counsel's performance fell below an objective standard of reasonable representation and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), it seems fairly clear that the affidavit Romero submitted sufficiently alleged that his counsel's representation was deficient to satisfy the first prong of the *Strickland* test. The more difficult hurdle is the second prong—prejudice.

{¶ 50} To satisfy the prejudice prong, Romero needed to show that but for his counsel's errors, there was a reasonable probability that he would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Xie*, 62 Ohio St.3d 521, 525, 584 N.E.2d 715 (1992).

{¶ 51} As an initial matter, nowhere does Romero assert in his affidavit that but for his counsel's purported errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill* at 59. Rather, he says only that he "would have been able to provide a defense * * * at a trial of the matter." But even if we overlook this defect—concluding, as the plurality seems to, that what Romero said is close enough and that implicit in his affidavit is a suggestion that he would have taken the case to trial had he known more about immigration law—Romero still fails to set forth operative facts meeting the prejudice prong.

**{¶ 52}** At the change-of-plea hearing, the trial court warned Romero that pleading guilty "may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." When asked if he understood, Romero replied, "Yes, ma'am." The court continued, "And with that in mind, are you still prepared to proceed?" Again, Romero answered, "Yes, ma'am." Shortly after hearing the warning, Romero stepped outside with his attorney to ask a question unrelated to his immigration status. Then, having expressed his understanding of the risk of deportation, and having taken an opportunity to confer with his attorney, he pleaded guilty.

**{¶ 53}** I assume that Romero meant what he said at the plea hearing—that he understood that he could be deported as a result of the plea. In light of the court's advisement and Mr. Romero's affirmative representation that he understood that he could be deported, Romero cannot demonstrate that he was prejudiced.

**{¶ 54}** It would likely be a different story if Romero's affidavit indicated that his attorney gave him advice that undermined, or contradicted, the trial court's clear warning. This is not a case like *Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1968, 198 L.Ed.2d 476 (2017), fn. 4, in which the attorney provided affirmative misadvice "specifically undermining the judge's warnings themselves, which the defendant contemporaneously stated on the record he did not understand."

**{¶ 55}** Indeed, in *Lee*, the United States Supreme Court cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at ___, 137 S.Ct. at 1967.

**{¶ 56}** Here, the contemporaneous evidence is that Romero was told that he could be deported and said that he understood. An analogous case, decided after

*Lee*, is *United States v. Varatha-Rajan*, 6th Cir. No. 17-2225, 2018 U.S. App. LEXIS 16924 (June 21, 2018). There, the Sixth Circuit Court of Appeals held that even though counsel may have acted unreasonably in failing to inform the defendant of the consequences of the plea, the defendant could not show prejudice when the court had informed the defendant that his conviction could result in deportation. Similarly, in another post-*Lee* case, *Superville v. United States*, 284 F.Supp.3d 364, 366 (E.D.N.Y.2018), *aff'd*, 2d Cir. No. 18-680-pr, 2019 U.S.App. LEXIS 14074 (May 9, 2019), the court concluded that a defendant could not establish prejudice when a magistrate and district court judge had informed the defendant that "he could face deportation if he pleaded guilty." The court explained that if the advisement on immigration consequences "is to have meaning, courts must be able to rely on the fact that defendants take this warning seriously, and speak truthfully under oath when they acknowledge that they understand the immigration consequences of their plea." *Id.* at 375.

**{¶ 57}** Simply put, Romero's bald assertion that his attorney never advised him about the immigration consequences of pleading guilty does not amount to prejudice, because he plainly expressed that he understood he could be deported. Romero has failed to set forth sufficient operative facts that entitle him to an evidentiary hearing. Because the court holds otherwise, I respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

John D. Ferrero Jr., Stark County Prosecuting Attorney, and Ronald Mark Caldwell and Jessica L. Logothetides, Assistant Prosecuting Attorneys, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

Ryan Muennich, urging affirmance for amicus curiae Immigrant Defense Project.

Pinales, Stachler, Young, Burrell & Crouse Co., L.P.A., and Candace C. Crouse, urging affirmance for amicus curiae National Association of Criminal Defense Lawyers.

_____