[Cite as *State v. Paniagua*, 2025-Ohio-5800.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-03-009 |
| vs. | : | OPINION AND |
| | | JUDGMENT ENTRY |
| EFRAIN V. PANIAGUA, | : | 12/30/2025 |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20210069


Nicholas A. Adkins, Madison County Prosecuting Attorney, and Michael S. Klamo, Assistant Prosecuting Attorney, for appellee.

Web Norman Law, Inc., and William B. Norman, for appellant.


## **O P I N I O N**


**M. POWELL, J.**

{¶ 1} Appellant, Efrain Paniagua, appeals a decision of the Madison County Court of Common Pleas denying his postsentence motion to withdraw his guilty plea.

{¶ 2} Appellant is a citizen of Mexico. The record indicates he moved to the United States in 1999, when he was three years old. In April 2021, appellant was indicted on one count of first-degree felony aggravated possession of drugs and an accompanying major drug offender specification. The charge arose after police discovered 22 kilograms of narcotics in the vehicle in which appellant was a passenger.

{¶ 3} On October 1, 2021, the trial court held a plea hearing during which it engaged in a full and proper Crim.R. 11 colloquy. The trial court also orally advised appellant, in compliance with R.C. 2943.031, that "a conviction of the offense to which you are pleading may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The court then asked appellant if he understood; appellant replied he did. The trial court further inquired, "And you've discussed that with [defense counsel]?" Appellant replied, "Yes, sir." Pursuant to plea negotiations, appellant then pled guilty to a second-degree felony aggravated possession of drugs, and the major drug offender specification was dismissed. Appellant was sentenced to an indefinite prison term of five to seven-and-one-half years.

{¶ 4} On February 7, 2025, appellant moved to withdraw his guilty plea pursuant to Crim.R. 32.1. on the ground defense counsel's failure to advise him of the immigration consequences of pleading guilty deprived him of his constitutional right to the effective assistance of counsel. In support of the motion, appellant attached his own affidavit in which he averred he is not a United States citizen; he is a citizen of Mexico; he was brought to the United States when he was three years old; his parents, siblings, and wife all reside in the United States; and he has little connection to Mexico. Regarding his plea, appellant further averred that although he repeatedly requested that defense counsel advise him of the immigration consequences of a guilty plea, defense counsel continually

- 2 -

postponed such discussion and ultimately never discussed with him the immigration consequences of pleading guilty, including the fact that a conviction for aggravated possession of drugs would "trigger a conclusive presumption of deportability"; that he entered his guilty plea with the understanding he could challenge deportation as a consequence of his guilty plea to a drug offense; that he first learned deportation was presumptively mandatory in January 2023; and that he would never have pled guilty had he known that deportation under the circumstances would be mandatory.

{¶ 5} The trial court denied appellant's motion without an evidentiary hearing. Noting that a Crim.R. 32.1 motion to withdraw a plea may only be granted to correct a manifest injustice, the trial court found that

> [Defendant] cannot reasonably argue that his guilty plea was the product of manifest injustice by virtue of defense counsel's failure to advise him that he could be deported as a consequence of his plea. The Defendant was properly advised of such by the Court and when the Court inquired of whether or not the Defendant had engaged in such conversations with his attorney, the Defendant answered in the affirmative."

{¶ 6} The trial court also found that appellant's claims were barred by res judicata because his assertions were based upon information available to him at the time he could have filed a direct appeal, and therefore the issue of ineffective assistance of counsel at the plea hearing could have been raised on direct appeal but was not.

{¶ 7} Appellant now appeals, raising three assignments of error. Appellant's first and third assignments of error will be addressed together.

{¶ 8} Assignment of Error No. 1:

THE TRIAL COURT ERRED IN FINDING NO MANIFEST INJUSTICE WARRANTING WITHDRAWAL OF APPELLANT'S GUILTY PLEA.

{¶ 9} Assignment of Error No. 3:

- 3 -

THE TRIAL COURT ERRED IN DENYING RELIEF WITHOUT CONDUCTING AN EVIDENTIARY HEARING.

{¶ 10} In his first assignment of error, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea on the ground he failed to establish manifest injustice. Appellant asserts that his R.C. 2925.11(A) aggravated possession of drugs conviction subjects him to mandatory deportation as a controlled substance conviction under 8 U.S.C. 1227(a)(2)(B)(i) or as an aggravated felony conviction under 8 U.S.C. 1227(a)(2)(A)(iii), and that had he known of the mandatory deportation consequences, he would never have pled guilty to aggravated possession of drugs. Appellant also asserts that "due process principles require this Court to grant an evidentiary hearing to determine the veracity of [his] claims regarding defense counsel's failure to advise him of the fact that he was subject to mandatory deportation." In his second assignment of error, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea without conducting a hearing on the motion.

{¶ 11} Crim.R. 32.1 allows postsentence withdrawal of a guilty plea in limited circumstances "to correct a manifest injustice." A defendant seeking to withdraw a guilty plea after the imposition of sentence bears the burden of establishing the existence of a manifest injustice. *State v. Tapia-Cortes*, 2016-Ohio-8101, ¶ 11 (12th Dist.). In general, manifest injustice relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process. *Id*. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court. *Id.* at ¶ 12. Consequently, an appellate court will not reverse the trial court's decision absent an abuse of discretion. *Id.*

{¶ 12} Ineffective assistance of counsel is a proper basis for seeking a postsentence withdrawal of a guilty plea, and can constitute a manifest injustice sufficient

- 4 -

to allow the postsentence withdrawal of the guilty plea. *Id.* at ¶ 13; *State v. Ayesta*, 2015-Ohio-1695, ¶ 8 (8th Dist.). When an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Tapia-Cortes* at ¶ 13*; Strickland v. Washington,* 466 U.S. 668, 687-688 (1984).

{¶ 13} An evidentiary hearing on a Crim.R. 32.1 motion to withdraw a guilty plea is not always required. *Ayesta* at ¶ 10. A hearing is not required where the record, "on its face, conclusively and irrefutably contradicts the allegations in support of withdrawal," or where the record indicates the movant is not entitled to relief. *Id.* However, an evidentiary hearing is required if the facts alleged by the defendant, and accepted as true, would require withdrawal of the plea. *State v. Williams*, 2013-Ohio-1387, ¶ 17 (12th Dist.).

{¶ 14} In his affidavit, appellant averred (1) that his conviction for aggravated possession of drugs made his deportation presumptively mandatory, (2) that he first learned about the conclusive presumption of deportability in January 2023, (3) that although he repeatedly asked that defense counsel advise him of the immigration consequences of pleading guilty, defense counsel continually postponed such discussion and ultimately never discussed with him the immigration consequences of a guilty plea, and (4) that he never would have pled guilty had he known that deportation under the circumstances was mandatory.

{¶ 15} "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. The severity of deportation . . . only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (Citations omitted.) *Padilla v. Kentucky,* 559 U.S. 356, 373-374 (2010). Consequently, when negotiating a guilty plea, counsel has a

duty to accurately advise his noncitizen client of the immigration consequences of the plea. *Tapias-Cortes*, 2016-Ohio-8101, at ¶ 14 (12th Dist.). Counsel breaches this duty by either providing affirmative misadvice about immigration consequences or by not providing any advice at all when advice is warranted. *Padilla* at 370-374.

{¶ 16} "When the law is not succinct and straightforward, a criminal defense attorney need no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. However, when the immigration consequences can "easily be determined from reading the removal statute," and "the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.* Counsel's failure to provide a client with available advice regarding deportation "clearly satisfies the first prong of the *Strickland* analysis." *Id.*

{¶ 17} *Padilla* involved a noncitizen defendant who pled guilty to the transportation of a large amount of marijuana. The United States Supreme Court noted that "Padilla's crime, like virtually every drug offense except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C. 1227(a)(2)(B)(i)." *Padilla*, 559 U.S. at 359, fn. 1. "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* at 368. Accordingly, Padilla's attorney had a duty to provide clear advice to Padilla that his deportation was presumptively mandatory. *Id.* at 368-369.

{¶ 18} Appellant was convicted on one count of aggravated possession of drugs, a second-degree felony. The drug at issue was methamphetamine. In his motion to withdraw his guilty plea, appellant asserted that his conviction subjects him to mandatory deportation under *Padilla* and 8 U.S.C. 1227(a)(2)(B)(i). On appeal, appellant also asserts

the conviction subjects him to mandatory deportation under 8 U.S.C. 1227(a)(2)(A)(iii).

{¶ 19} 8 U.S.C. 1227 defines classes of deportable aliens.[1] 8 U.S.C. 1227(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's use of 30 grams or less of marijuana, is deportable." 21 U.S.C. 802(6) defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of [21 U.S.C.S. § 812]." Methamphetamine is one such drug. *Barbosa v. Garland*, 70 F.4th 1080, 1082 (8th Cir. 2023); *State v. Kurdi*, 2022-Ohio-4459 (11th Dist.). 8 U.S.C. 1227(a)(2)(B)(i) is succinct, clear, and straightforward in defining the deportation consequences resulting from a noncitizen offender's guilty plea to a controlled substance conviction. Appellant's conviction of aggravated possession of drugs is a violation of Ohio law relating to controlled substances, which the State admits, and is therefore a deportable offense under 8 U.S.C. 1227(a)(2)(B)(i). Thus, defense counsel was constitutionally obligated to advise appellant that as a result of his guilty plea, his deportation would be "presumptively mandatory." *Padilla*, 559 U.S. at 368-369.

{¶ 20} 8 U.S.C. 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony" includes "illicit trafficking in a controlled substance . . ., including a drug trafficking crime." 8 U.S.C. 1101(a)(43). 18 U.S.C. 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq)." Appellant

---

1. We note that although the term "deportable" suggests that deportation is a potential consequence of a conviction, the United States Supreme Court has recognized that the practical result of such a conviction is that "the alien almost always *will be deported*." (Emphasis in original.) *State v. Ayesta*, 2015-Ohio-1695, ¶ 7 (8th Dist.), citing *Padilla v. Kentucky*, 559 U.S. 356, 360-364 (2010). Furthermore, courts have described the level of certainty of deportation for deportable offenses as 'virtually automatic' and 'unavoidable,' 'certain,' and 'presumptively mandatory.'" (Citations omitted.) *Ayesta* at ¶ 7.

argues that his second-degree felony conviction is a felony punishable under the federal Controlled Substances Act and therefore an "aggravated felony" for purposes of 8 U.S.C.A. § 1227(a)(2)(A)(iii). The State argues that the amendment of the aggravated possession offense from a first-degree felony under R.C. 2925.11(C)(1)(d) to a second-degree felony under R.C. 2925.11(C)(1)(c) reduced the amount of methamphetamine involved to between 15 grams and 150 grams. Based upon that amount of drugs, the State contends that the offense would be a federal class A misdemeanor and therefore would not be an aggravated felony for purposes of 8 U.S.C.A. § 1227(a)(2)(A)(iii).

{¶ 21} As Justice Alito recognized in his concurrence in *Padilla*, "determining whether a particular crime is an 'aggravated felony' . . . is not an easy task. . . . Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.'" *State v. Taveras*, 2017-Ohio-1496, ¶ 29 (12th Dist.), quoting *Padilla*, 559 U.S. at 378. *See also State v. Adames*, 2017-Ohio-4058, ¶ 26 (5th Dist.). "Therefore, as the determination of whether an offense is an 'aggravated felony' is not 'truly clear' or easily ascertainable, defense counsel's duty was to provide advice that the 'criminal charges may carry a risk of adverse immigration consequences.'" *Taveras* at ¶ 29, citing *Padilla* at 369.

{¶ 22} In denying appellant's Crim.R. 32.1 motion, the trial court never determined whether appellant received ineffective assistance of counsel under *Strickland*. Rather, the trial court primarily denied the motion on the ground appellant failed to establish manifest injustice. Specifically, the trial court found that during the plea hearing, it properly warned appellant of the immigration consequences of his plea as required under R.C. 2943.031(A) and then specifically inquired whether appellant had discussed such consequences with defense counsel. The court stated that its inquiry and appellant's ensuing affirmative answer directly contradicted appellant's assertion in his affidavit.

{¶ 23} When accepting a guilty or no contest plea from a defendant who is not a citizen of the United States, a trial court must give verbatim the warning set forth in R.C. 2943.031(A). *State v. Francis*, 2004-Ohio-6894, ¶ 20. It is not disputed that the trial court fully complied with R.C. 2943.031(A). However, the narrow factual inquiry under *Padilla* is whether the defendant was informed *by defense counsel* of *certain* immigration consequences and whether prejudice resulted therefrom. "'It is counsel's duty, not the court's, to warn of certain immigrations consequences, and counsel's failure cannot be saved by a plea colloquy.'" *State v. Romero*, 2019-Ohio-1839, ¶ 18, quoting *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014). "When, as here, the defendant asserts a claim of ineffective assistance of *counsel*, the court must focus on *counsel's* deficient performance and the prejudice arising from that deficiency." (Emphasis in original.) *Romero* at ¶ 18.

{¶ 24} "The trial court's advisement under R.C. 2943.031(A) also does not cure an attorney's failure to advise his client of the immigration consequences of a guilty plea." *Id.* at ¶ 19. The R.C. 2943.031(A) advisement that a trial court must provide prior to accepting a noncitizen defendant's guilty or no-contest plea to a felony or misdemeanor other than a minor misdemeanor "warns defendants that 'pleading guilty *may* have the consequence[ ] of deportation.'" (Emphasis in original.) *Id.* at ¶ 19-20. "But that generalized warning does not replace counsel's duty to advise his client of the consequences of his guilty plea, as *Padilla* instructs." *Id.* at ¶ 20. "'Warnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel.'" *Id.*, quoting *United States v. Kayode*, 777 F.3d 719, 728 (5th Cir. 2014); *see also Tapias-Cortes*, 2016-Ohio-8101 (12th Dist.) (counsel's failure to properly advise his client as to the immigration consequences of a plea is not cured by the trial court's compliance with R.C. 2943.031).

{¶ 25} The record is equivocal as to what advice defense counsel provided appellant regarding the immigration consequences of pleading guilty. In his affidavit attached to his motion to withdraw his plea, subject to perjury, appellant denies receiving any such advice from defense counsel despite appellant's multiple requests for defense counsel to discuss the immigration consequences of a guilty plea. By contrast, the transcript of the plea hearing reflects that following the trial court's R.C. 2943.031(A) advisement and its subsequent brief inquiry, appellant acknowledged he had discussed the issue with defense counsel. The record does not reflect the details of defense counsel's advice regarding the immigration consequences of a guilty plea. Whatever advice defense counsel may have provided concerning the immigration consequences of appellant's guilty plea, the record does not disclose that counsel advised that deportation would be presumptively mandatory as a result of appellant's plea. Appellant's significant connections to the United States and his little, if any, connection to Mexico, lends credence to his claim that had he known that his deportation would be presumptively mandatory, he would not have pled guilty. There is no affidavit from defense counsel to clarify the issue.

{¶ 26} In light of the foregoing, and specifically that deportation for appellant's controlled substance conviction is presumptively mandatory under 8 U.S.C. 1227(a)(2)(B)(1), and the equivocal record regarding what advice defense counsel provided appellant concerning the immigration consequences of pleading guilty, we find that appellant's motion and affidavit raised a colorable claim of ineffective assistance of counsel at the plea hearing sufficient to warrant an evidentiary hearing on the motion. Because the facts alleged by appellant, if accepted as true, might support granting appellant's motion to withdraw his plea, we find the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea without holding a hearing.

Accordingly, we reverse the trial court's denial of appellant's motion to withdraw his plea and remand this case for the trial court to hold an evidentiary hearing to determine appellant's ineffective assistance claim.

{¶ 27} Appellant's third assignment of error is sustained. Based on our resolution of the third assignment of error, appellant's first assignment of error is moot and we need not consider it.

{¶ 28} Assignment of Error No. 2:

THE TRIAL COURT ERRED IN APPLYING RES JUDICATA.

{¶ 29} Appellant argues the trial court erred in finding that his Crim.R. 32.1 motion to withdraw his plea was barred by res judicata. In its decision, the trial court found that appellant's assertions of ineffective assistance of counsel during the plea hearing were "based upon information which was available to [him]" at the time he could have filed a direct appeal, and therefore, the issue could have been raised on direct appeal but was not.

{¶ 30} The doctrine of res judicata provides that a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or an appeal from the judgment. *State v. Wagers*, 2012-Ohio-2258, ¶ 10 (12th Dist.), citing *State v. Szefcyk*, 1996-Ohio-337, ¶ 9. Thus, as this court has stated previously, res judicata applies and "bars claims raised in a Crim.R. 32.1 postsentence motion to withdraw a guilty plea that were raised or could have been raised in a prior proceeding." *State v. Hagens*, 2025-Ohio-4989, ¶ 21 (12th Dist.). In other words, claims raised in support of a Crim.R. 32.1 postsentence motion to withdraw a guilty plea that could have been raised on direct appeal, but were not, are barred by res judicata.

- 11 -

*Id.*

{¶ 31} In some instances, competent, relevant, and material evidence presented from outside the trial record may defeat the application of res judicata. *Id.* at ¶ 22. However, this outside evidence "must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record" and possess some standard of cogency. *State v. Daniels*, 2019-Ohio- 2274, ¶ 30 (12th Dist.).

{¶ 32} We find that the trial court erred in applying res judicata. Appellant's affidavit avers that he first learned deportation was presumptively mandatory in January 2023, more than a year after he pled guilty and was sentenced for aggravated possession of drugs. Moreover, the gist of appellant's argument involves cogent evidence outside the trial record, that is, what advice, if any, defense counsel provided regarding the immigration consequences of a guilty plea. Thus, appellant could not have appealed the constitutional claim based upon information in the original trial record.

{¶ 33} Appellant's second assignment of error is sustained.

{¶ 34} Judgment reversed and remanded for further proceedings consistent with this opinion.

SIEBERT, J., concurs.

PIPER, P.J., dissents.

**PIPER, P.J., dissenting.**

{¶ 35} More than three years after being sentenced, Paniagua has filed a motion to withdraw his guilty plea, along with a carefully crafted, self-serving affidavit claiming his trial attorney failed to advise him that his deportation is a "forgone conclusion." In essence, Paniagua contends his plea was not entered knowingly, intelligently, and voluntarily because he was never told by his attorney his plea would result in mandatory

deportation. Although Paniagua never filed a direct appeal or a petition for postconviction relief, he now claims it was an abuse of discretion by the trial court not to grant him an evidentiary hearing. My respected colleagues agree with Paniagua; however, I do not.

{¶ 36} Before an evidentiary hearing is required on a motion to withdraw a guilty plea, a defendant must "submit evidentiary documents containing sufficient operative facts to demonstrate" an entitlement to relief. *State v. Kapper*, 5 Ohio St.3d 36, 38, (1983) quoting *State v. Jackson*, 64 Ohio St.2d 107 (1980). "The credibility and weight of [a] defendant's assertions in support of a motion to withdraw a plea and the decision as to whether to hold a hearing are matters entrusted to the sound discretion of the trial court." *State v. Romero* 2019-Ohio-1839, ¶ 34. An affidavit that is contradicted by the record may be discounted by the trial court without resorting to an evidentiary hearing. *State v.* Miller 2016-Ohio-7360, ¶ 14 (12th Dist.). "[T]ypically, a self-serving affidavit is insufficient to establish a manifest injustice." *Id*. This case is no exception.

{¶ 37} Here, as the trial court recognized in its entry, Paniagua's affidavit directly contradicts his own statements at his original plea hearing. Because the trial court found Paniagua's affidavit not to be credible, Paniagua has failed to demonstrate his counsel's performance was deficient and an evidentiary hearing is not necessary. *See State v. Romero*, 2019-Ohio-1839, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Our inquiry should end there.[2]

{¶ 38} In his affidavit, Paniagua avers:

> Prior to my plea of guilty in that case. which occurred on October 1, 2021. I repeatedly requested that Mr. Joslyn [explain] what the precise likely immigration consequences of my plea of guilty and conviction [are]; Each time, Mr. Joslyn responded that he would discuss those consequences with me later.

---

2. While both parties have made extensive arguments as to whether Paniagua's offense requires mandatory deportation, I find it unnecessary to decide the merit within those respective arguments. Yet I would say, I do not accept the majority's suggestion that the possibility of deportation, being deportable, is the same as mandatory deportation, being deportation required by operation of law.

At no time did we discuss those consequences prior to my plea of guilty in this case on October 1, 2021.

At no time prior to my plea did Mr. Joslyn advise me that my conviction would trigger a conclusive presumption of deportability.

{¶ 39} However, the plea transcript and Paniagua's colloquy with the trial court belies the existence of any evasive or dilatory behavior on the part of trial counsel. And furthermore, the affidavit never avers the attorney informed Paniagua that he would *not* be deported or that he was *not* at near-certain risk of being deported. Paniagua's affidavit does not contain sufficient operative facts and is not credible.

{¶ 40} As the majority recognizes, the generalized warnings of possible deportation mandated by R.C. 2943.031(A) do not replace counsel's duty to advise his client of the deportation consequences of his guilty plea. But here, the trial court did more than read the statutory warning verbatim. After reading the statutory warning, the colloquy went on:

THE COURT: "Do you understand that?"
PANIAGUA: "Unfortunately, yes, Your Honor."
THE COURT: "And you've discussed that with Mr. Joslyn?"
PANIAGUA: "Yes, sir."
. . .
THE COURT: "You've been represented by Mr. Joslyn throughout this process. Are you satisfied with his representation?"
PANIAGUA: "He's a great lawyer, Your Honor."

{¶ 41} There is no reason to suspect Paniagua's responses when before the court and on the record were not sincere and candid.

{¶ 42} As the trial court reasoned in its entry denying Paniagua's motion to withdraw plea, one would have expected Paniagua to echo or raise the important concerns he now attempts to construct in his affidavit at the time he was engaged in a colloquy with the court. Instead, Paniagua recognized the "unfortunate" issue of

deportation, affirmed discussing it with his attorney, and then went out of his way to compliment his attorney's performance. Accordingly, the trial court properly concluded that Paniagua could not reasonably argue his attorney failed to properly advise him and that his self-serving affidavit was not credible. We should not presume Paniagua was dishonest at his plea hearing before the trial court.

{¶ 43} Certainly, trial counsel has a duty to give correct advice regarding deportation consequences. However, Paniagua's affidavit does not detail any of the deportation advice he received, nor does it explain what false impression he was given. While not required, it is noteworthy Paniagua did not produce an affidavit from his trial counsel. Instead, Paniagua has deliberately chosen to assert evasiveness and incompetence, in a vague way, on the part of his attorney, which contradicts his own statements on the record. This undercuts his credibility. In reversing the trial court's decision, the majority opinion puts the cart before the horse, skipping over the issue of Paniagua's credibility and ordering an unnecessary evidentiary hearing. I do not find, as my respected colleagues do, that the trial court's decision not to hold an evidentiary hearing was unreasonable, arbitrary, or unconscionable. Paniagua simply fishes for an opportunity to reconstruct the new claims against his previous attorney. Therefore, I respectfully dissent.[3]

---

3. Paniagua asks us to assume there is evidence outside the record that his attorney never appropriately informed him of deportation consequences. However, like postconviction relief proceedings, suggestions of evidence outside the record must meet some threshold standard of cogency; otherwise simply attaching a self-serving affidavit which is contradicted by the existing record would automatically defeat the finality of prior proceedings. Paniagua's affidavit did not tell the trial court what the attorney informed him regarding immigration consequences.

---
## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for further proceedings consistent with the above Opinion.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Mike Powell, Judge


/s/ Melena S. Siebert, Judge