[Cite as *State v. Longworth*, 2021-Ohio-4538.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | |
| Appellee, | : | CASE NO. CA2021-02-015 |
| | : | O P I N I O N |
| - vs - | | 12/27/2021 |
| | : | |
| MARC A. LONGWORTH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 21CRB01240

Laura R. Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Marc A. Longworth, appeals the decision of the Hamilton Municipal Court overruling his Crim.R. 32.1 motion to withdraw his guilty plea to one count of second-degree misdemeanor attempted assault. For the reasons outlined below, we reverse the trial court's decision denying Longworth's motion and remand this matter to the trial court for further proceedings consistent with this opinion.

**Facts and Procedural History**

{¶ 2} On March 23, 2010, a complaint was issued charging Longworth with one count of first-degree misdemeanor domestic violence in violation of R.C. 2919.25(A). Pursuant to that statute, it shall be unlawful for any person to "knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(3) defines the phrase "physical harm to persons" to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration." As stated in the complaint, the charge arose after it was alleged Longworth "smacked" his then wife, Alyssa Longworth nka Fernbach, "across the right side of her face" on the evening of March 16, 2010.

{¶ 3} On September 14, 2010, Longworth entered into a plea agreement and pled guilty to a reduced charge of second-degree misdemeanor attempted assault in violation of R.C. 2923.02(A) and 2903.13(A). These statutes make it unlawful for any person to "knowingly cause or attempt to cause physical harm to another or to another's unborn." After accepting Longworth's guilty plea, the trial court sentenced Longworth to a suspended 30-day jail sentence. The trial court also ordered Longworth to pay a $200 fine and placed Longworth on a two-year community control term. There is no dispute that Longworth thereafter paid his fine and successfully completed his two-year community control term without incident.

{¶ 4} In 2015, several years after he was discharged from his two-year community control term, Longworth filed an application to seal the record of his attempted assault conviction. Longworth filed this application under the now former R.C. 2953.32(A). Pursuant to that statute, an "eligible offender" convicted of a misdemeanor could file an application to seal the record of his or her conviction one year after the offender's final discharge. The trial court issued an entry sealing the record of Longworth's attempted assault conviction on August 14, 2015.

- 2 -

{¶ 5}   On December 29, 2015, Longworth and Fernbach were divorced.  The record indicates that Longworth and Fernbach owned a significant number of firearms during their marriage.  The record also indicates that four of those firearms were purchased by Fernbach and purportedly given to Longworth as gifts in the years 2011, 2012, 2013, and 2014.  The ownership of these four firearms later became a part of Longworth and Fernbach's divorce negotiations and eventual divorce settlement.  As a part of the final divorce decree, Fernbach agreed to transfer her ownership interest in the four firearms she purportedly purchased for Longworth.

{¶ 6}   On September 2, 2016, Longworth and Fernbach met at a local firearms dealer to complete the necessary paperwork to have those four firearms transferred to Longworth.  Five days later, on September 7, 2016, Longworth received a notice informing him that the transfer had been denied due to his prior attempted assault conviction.

{¶ 7}   On September 20, 2016, Longworth received a letter from the United States Department of Justice ("DOJ") requesting additional information related to his attempted assault conviction.  The following month, in October of 2016, Longworth responded with the requested information.  The record indicates that over the next two years Longworth corresponded with the DOJ on multiple occasions in hopes of convincing the DOJ to permit the transfer of the four firearms to go forward.

{¶ 8}   On December 27, 2018, Longworth received a letter from the DOJ setting forth the DOJ's final decision finding Longworth's prior attempted assault conviction subjected him to the federal firearm disability imposed under 18 U.S.C. 922(g)(9).  Pursuant to that statute, it is unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to ship, transport, possess, or receive "any firearm or ammunition" in or affecting commerce.  For purposes of this statute, the term "misdemeanor crime of domestic violence" means an offense that is a misdemeanor under

federal, state, or tribal law that has, as an element, "the use or attempted use of physical force" that was "committed by a current or former spouse" of the victim. 18 U.S.C. 921(33)(A). Therefore, as explained by the DOJ within its December 27, 2018 letter:

> [T]he crime does not have to be called "domestic violence" or "family violence" by name [for the federal firearm disability imposed under 18 U.S.C. 922(g)(9) to apply]; so long as the convicted person used or attempted to use physical force or threatened to use a deadly weapon against someone with whom he or she was in a qualifying relationship, the standard is met.

{¶ 9} The DOJ also explained within its December 27, 2018 letter:

> Based on the documentation submitted, and further review, your prohibition resulted from an arrest from the Butler County Sheriff's Office on March 17, 2010, for Domestic Violence. This arrest resulted in a misdemeanor conviction under Ohio Revised Code, §2923.02/§2903.13, for Attempted Assault, which contains as an element of the crime the use of physical force or the attempted use of physical force. Finally, at the time the offense was committed, the victim was a person with whom you were cohabitating with as a spouse, parent or guardian.

{¶ 10} The DOJ further explained that Longworth's attempted assault conviction subjected him to the federal firearms disability despite Longworth having had the record of his attempted assault conviction sealed. As explained by the DOJ, this is because "a sealed/expunged record from the state of Ohio does not remove the federal prohibition for misdemeanor crimes of domestic violence."

{¶ 11} On January 24, 2019, Longworth responded to the DOJ by letter requesting it reconsider its decision and instead confirm that he was "not prohibited from purchasing, possessing or otherwise using firearms in the future based on his previously expunged conviction." The record indicates that the DOJ rejected Longworth's request to reconsider its decision shortly thereafter in March of 2019.

{¶ 12} On April 20, 2020, Longworth filed a motion requesting the trial court unseal the record of his attempted assault conviction so that he could obtain a transcript of his

arraignment, plea, and sentencing hearings. This, according to Longworth's motion, was to assist him in "exploring relief" from the DOJ's final decision set forth in its December 27, 2018 letter finding his prior attempted assault conviction subjected him to the federal firearm disability. The trial court issued an entry granting Longworth's motion to unseal the record of his attempted assault conviction on April 30, 2020.

{¶ 13} On August 3, 2020, Longworth filed a Crim.R. 32.1 motion to withdraw the guilty plea he entered on September 14, 2010. Longworth argued that he should be entitled to withdraw his plea because he received ineffective assistance of counsel when his trial counsel erroneously advised him "that a plea to attempted assault would avoid the firearm disability under federal law." Longworth also argued that a manifest injustice occurred when his trial counsel "provided defective advice that his plea to attempted assault would avoid a federal firearm disability." Longworth argued that this was because he "would have rejected the plea to attempted assault had he known it would result in disability" imposed under 18 U.S.C. 922(g)(9).

{¶ 14} On October 21, 2020, the trial court held a hearing on Longworth's Crim.R. 32.1 motion to withdraw guilty plea. During this hearing, the trial court heard testimony from a total of six witnesses. This includes testimony from one of Longworth's former attorneys, Longworth, and Longworth's ex-wife, Fernbach.

*Longworth's Former Counsel's Testimony*

{¶ 15} One of Longworth's former attorneys testified that he and his former partner were hired in March of 2010 to defend Longworth against the first-degree misdemeanor domestic violence charge. Longworth's counsel testified that this representation included consulting with Longworth and presenting Longworth with the state's plea offer to the reduced charge of second-degree misdemeanor attempted assault. Longworth's counsel testified that he thought the state's plea offer was a good offer because Fernback, the

alleged victim, Fernbach, was an adult, and because it was his belief that an attempted assault conviction "would be something that would secure [Longworth's] gun rights and not affect his gun rights, because that was the major emphasis of our representation."

{¶ 16} Longworth's counsel also testified that he had advised Longworth that entering a guilty plea to attempted assault would preserve Longworth's rights to own and possess firearms, something that would not have been the case if Longworth had been found guilty of domestic violence following a trial.  Longworth's counsel further testified that had he known "all this stuff was going to happen" that he believed Longworth would not have agreed to the state's plea offer "and we would have set it for trial and went from there." Longworth's counsel additionally testified that he believed Longworth "took the plea because we didn't want to have to go through the trial part of it, because I assumed that this would do the trick.  And, you know, so I feel bad about that."

*Longworth's Testimony*

{¶ 17} Longworth testified that he hired two attorneys in March of 2010 to defend him against the domestic violence charge.  Longworth testified that upon meeting with his attorneys, who Longworth testified "were, you know, the best in the business," that he was "adamant" that he wanted "to take it to trial."  Longworth testified that one of his attorneys responded to this and told him "why take the risk, * * * you and [Fernbach] don't belong in this," "don't drain the Court system, don't take the time.  The courts don't have the time for this."  Longworth also testified that his attorneys told him to "take your medicine, you know, do your two years non-reporting probation and move on and save yourself money, blah, blah, blah, blah, so on and so forth."  Longworth further testified that his attorneys advised him that accepting the state's plea offer to a reduced charge of second-degree misdemeanor attempted assault would "preserve [his] gun rights without having to weigh down the Court system and taking something to a trial," advice that Longworth testified

"they thought was true."

{¶ 18} Continuing, Longworth testified that he would have "[a]bsolutely not" accepted the state's plea offer if he had known a conviction for attempted assault would subject him to the federal firearm disability imposed under 18 U.S.C. 922(g)(9). Longworth testified that he would have instead gone to trial and defended against the charge of domestic violence. Longworth testified that this is because he was innocent and because he would have "done anything" to preserve his right to possess and own firearms because he was "raised around it," because he wanted his children to "enjoy the same things that [he] enjoyed as a child," and because "the ability to protect [himself] within [his] own house is very important to [him]." Longworth also testified that the outdoors, hunting, fishing, and target practicing has "always been a big part of [his] life," "it always will be," and that "besides [his] children, it's the most important thing, you know, one of the most important things in [his] life."

{¶ 19} Longworth further testified that when he accepted the state's plea offer that he did not think his right to own and possess firearms would be impaired in any way given the advice that he had received from his two attorneys. However, upon first learning that his right to own and possess firearms was, in fact, impaired by his attempted assault conviction, Longworth testified that he contacted his divorce attorney and said "they got this all wrong, you got to make this transfer happen, you know, XYZ, so within ten days, I think we sent a response back to the DOJ." Longworth testified that he has since retained the services of various other attorneys "without stop and interruption" in order to restore his right to own and possess firearms. According to Longworth, this has cost him over $25,000 in legal fees. Longworth also testified that he had been "diligently" working on this issue "[e]very day" to the point where he goes to bed "thinking about it" and wakes up in the morning "thinking about it," but that it has been "a tiring process, a very tiring process."

{¶ 20} Concluding, Longworth testified that he would have "absolutely one-thousand

percent" taken the case to trial if he had been correctly advised by his two former attorneys that a guilty plea to a reduced charge of second-degree misdemeanor attempted assault would have the same effect on his right to own and possess firearms as being found guilty of first-degree misdemeanor domestic violence.

*Fernbach's Testimony*

{¶ 21} Fernbach testified that she did not want the trial court to grant Longworth's Crim.R. 32.1 motion to withdraw his guilty plea. Fernbach testified that this was because of her general concerns about firearms and more specifically Longworth's interactions with their two children. Fernbach then testified about the incident that led to Longworth being charged with domestic violence. Fernbach testified that she remembered the incident "like yesterday" and wished that she "could turn back time and make it a domestic violence case, but at that time [she] wasn't in the position to – to do anything on [her] own." Fernbach also testified that the only reason she agreed to a reduced charge of attempted assault was because Longworth had threatened her and told her not to cry or let the trial court know that "this wasn't really what [she] wanted." Fernbach further testified that Longworth was "very convincing" in telling her that he was "very good friends" with the prosecutor, that she "was never going to get away with a domestic violence plea," and that "essentially [she] had to go along with whatever he wanted."

**The Trial Court's Decision and Longworth's Appeal**

{¶ 22} On January 8, 2021, the trial court issued a decision denying Longworth's Crim.R. 32.1 motion to withdraw his guilty plea. Longworth now appeals that decision, raising the following single assignment of error for review.

{¶ 23} THE COURT ERRED IN OVERRULING LONGWORTH'S RULE 32.1 MOTION TO WITHDRAW HIS PLEA.

{¶ 24} Longworth argues the trial court erred by denying his Crim.R. 32.1 motion to

withdraw his guilty plea. Upon review of the record, and for the reasons outlined below, we agree that the trial court erred by denying Longworth's Crim.R. 32.1 motion to withdraw his guilty plea given his two former attorneys provided Longworth with ineffective assistance of counsel. Longworth, therefore, has established that a manifest injustice would occur if Longworth was not permitted to withdraw his guilty plea to second-degree misdemeanor attempted assault.

*Crim.R. 32.1 Motion to Withdraw Guilty Plea*

{¶ 25} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant who seeks to withdraw a guilty plea after the imposition of a sentence has the burden of establishing the existence of a manifest injustice. *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "Manifest injustice is defined as a 'clear or openly unjust act.'" *State v. Bryant*, 12th Dist. Butler Nos. CA2005-02-025 and CA2005-04-086, 2005-Ohio-6855, ¶ 16, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998). "To prove a manifest injustice, the defendant must show a 'fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015 and CA2017-03-016, 2017-Ohio-7657, ¶ 10, quoting *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9. This requirement "is designed to discourage a defendant from pleading guilty to test the weight of the potential reprisal, and later attempting to withdraw the plea if the sentence was unexpectedly severe." *Williams* at ¶ 13. This sets forth an "an extremely high standard that is allowable only in extraordinary cases." *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 15.

{¶ 26} "A trial court's decision regarding a post-sentence motion to withdraw a guilty plea is reviewed on appeal under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler No. CA2010-03-059, 2010-Ohio-5669, ¶ 15; *State v. Johnson*, 12th Dist. Butler No. CA2016-07-128, 2017-Ohio-4116, ¶ 10 ("[w]e review a trial court's decision on a post-sentence motion to withdraw a plea for an abuse of discretion").  An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable.  *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14.  "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'"  *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed.2014).  "A decision is unreasonable where a sound reasoning process does not support it."  *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7, citing *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990).  "'An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness.'"  *State v. Wane*, 12th Dist. Butler Nos. CA2020-01-010, CA2020-01-011, CA2020-01-014, and CA2020-01-015, 2020-Ohio-4874, ¶ 22, quoting *Campbell v. 1 Spring, LLC*, 10th Dist. Franklin No. 19AP-368, 2020-Ohio-3190, ¶ 9.

*Ineffective Assistance of Counsel*

{¶ 27} Ineffective assistance of counsel is a proper basis for a defendant to raise when seeking a post-sentence withdrawal of a guilty plea under Crim.R. 32.1.  *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 16.  To that end, "[w]hen an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel," such as the case here, "the defendant must show (1) his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty."  *State v. Murray*, 12th Dist. Brown No.

CA2015-12-029, 2016-Ohio-4994, ¶ 26. This requires the reviewing court to "determine whether the totality of circumstances supports a finding that counsel's performance was deficient, and if so, whether the deficient performance was prejudicial to the defendant." *State v. Romero,* 156 Ohio St.3d 468, 2019-Ohio-1839, ¶ 34. "The proponent of an ineffective assistance claim must establish both elements to warrant relief." *State v. Robinson,* 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 48. Therefore, because the proponent must establish both elements to warrant relief, "[a] reviewing court may approach the ineffective assistance analysis starting with either prong of the test, and a defendant's failure to satisfy one prong obviates the court's need to review the other." *State v. Napier*, 12th Dist. Clermont Nos. CA2014-06-039 and CA2014-06-046, 2015-Ohio-1413, ¶ 12.

*Was Longworth's Trial Counsel Deficient in Their Performance?*

{¶ 28} To support his single assignment of error, Longworth has set forth three issues for review. In his first issue, Longworth argues the trial court erred by finding his two former attorneys' assistance did not fall below an objective standard of reasonable representation given that they misadvised him about the impact a guilty plea to a reduced charge of second-degree misdemeanor attempted assault would have on his right to own and possess firearms. To support this argument, Longworth claims the trial court erred by finding it was reasonable for his two former attorneys "to be ignorant of the federal disability's scope and to misadvise him about it." Longworth also claims the trial court erred by finding there was no defective performance because the definition of what constitutes a "misdemeanor crime of domestic violence" as that term is used in 18 U.S.C. 922(g)(9) was "unclear" or that the DOJ's position was subject to "unforeseen change." We agree with Longworth's claims.

{¶ 29} "The issue regarding counsel's performance for any ineffective-assistance-of-

counsel claim is whether counsel's assistance was reasonable considering all the relevant circumstances." *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, ¶ 95, citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052 (1984). That is, stated differently, it is only where counsel's assistance falls below "an objective standard of reasonable representation" that a claim of ineffective assistance of counsel can be had. *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, ¶ 78. Unlike the constitutional guarantee of due process that places a duty on the trial court to ensure a defendant's guilty plea is knowingly, intelligently, and voluntarily entered, "counsel's duty to provide competent advice during plea proceedings arises from a separate constitutional guarantee – the Sixth Amendment right to counsel." *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, ¶ 18, citing *Missouri v. Frye*, 566 U.S. 134, 141, 132 S.Ct. 1399 (2012). Therefore, in order to maintain a successful ineffective assistance of counsel claim, Longworth was required to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment.'" *State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, ¶ 24, quoting *Strickland* at 687.

{¶ 30} Applying this "defective-performance standard" to the case at bar, the trial court found Longworth had failed to prove his two former attorneys were deficient in their performance even though they had incorrectly advised Longworth that he would not be subject to the federal firearm disability imposed under 18 U.S.C. 922(g)(9) by accepting the state's plea offer to a reduced charge of second-degree misdemeanor attempted assault. This is because, as the trial court found, it is "difficult to say they performed deficiently" even though they were incorrect in their interpretation of the law, as well as in their advisement of how that law would be applied to Longworth, given that both attorneys were then, and still are, "qualified and experienced attorneys." What the trial court found, therefore, was that it "would question" whether Longworth's two former attorneys were deficient given the

law they were tasked with interpreting, 18 U.S.C. 922(g)(9), was not succinct and straightforward, thereby providing them with no clear answer as to how that statute would (or could) be applied to Longworth if he were to accept the state's plea offer.

{¶ 31} However, despite the trial court's finding, we find the law that Longworth's two former attorneys were tasked with interpreting, 18 U.S.C. 922(g)(9), was then, and is still now, succinct and straightforward when considering the underlying facts of this case. As noted above, pursuant to 18 U.S.C. 922(g)(9), it is unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to ship, transport, possess, or receive "any firearm or ammunition" in or affecting commerce. The phrase "misdemeanor crime of domestic violence" is defined by 18 U.S.C. 921(33)(A)(ii) to mean an offense that has, as an element, "the use or attempted use of physical force" that was "committed by a current or former spouse" of the victim. This is the same statutory language used today as it was when Longworth entered his guilty plea. Therefore, just as the DOJ stated within in its December 27, 2018 letter, the phrase "misdemeanor crime of domestic violence" is not limited to crimes that fall under this state's domestic violence statute, R.C. 2919.25, so long as the offender used or attempted to use physical force against someone with whom he or she was in a qualifying relationship. This language was used to "close [a] dangerous loophole" in the gun control laws when, around the time of its passage, only about one-third of the states had a criminal statute that specifically proscribed "domestic violence" as a crime. *Voisine v. United States*, __ U.S. __, 136 S.Ct. 2272, 2276 (2016); and *United States v. Hayes*, 555 U.S. 415, 427, 129 S.Ct. 1079 (2009).

{¶ 32} Turning then to the facts of this case, Longworth pled guilty to second-degree misdemeanor attempted assault in violation of R.C. 2923.02(A) and 2903.13(A). As previously stated, these statutes make it unlawful for any person to "knowingly cause or attempt to cause physical harm to another or to another's unborn." The offense of

attempted assault, therefore, has, as an element, the use or attempted use of physical force. There is also no dispute that Longworth and Fernbach were married at the time the alleged incident occurred. This means "the use or attempted use of physical force" element was undoubtedly "committed by a current or former spouse" of the victim. Thus, when considering the underlying facts of this case, that a conviction for attempted assault would qualify as a "misdemeanor crime of domestic violence" is not now, nor was it then, difficult to discern. There was, in fact, at least one court that had already determined that the crime of attempted assault qualified as a "misdemeanor crime of domestic violence" as that term is defined by 18 U.S.C. 921(33)(A)(ii). *See People v. Adams*, 193 Misc.2d 78, 87 (S.P.N.Y., 2002) (applying a substantially similar attempted assault statutes when finding "[a]ttempted assault in the third degree would qualify under the federal statute as a domestic violence misdemeanor"). Accordingly, because the law being applied was both succinct and straightforward when considering the facts of this case, Longworth's trial counsel should have known that 18 U.S.C. 922(g)(9) would apply to Longworth if he were to accept the state's plea offer to second-degree misdemeanor attempted assault.

{¶ 33} In so holding, and when considering the unique facts of this case, we find it necessary to explicitly reject the trial court's decision finding it "difficult to say" whether Longworth's two former attorneys "performed deficiently" given that both attorneys were then, and are still now, "qualified and experienced attorneys." Although a relevant factor to consider, whether Longworth's two former attorneys were good attorneys who were qualified and experienced in matters of criminal law when Longworth hired them in 2010 is not dispositive of the issue of whether they performed deficiently in their representation of Longworth. The same is true as it relates to whether they are still good attorneys who are qualified and experienced in matters of criminal law now, today in 2021. No attorney, nor any court, is infallible. There is also no attorney who is incapable of ever providing

assistance that falls below an objective standard of reasonable representation. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, __ U.S. __ , 134 S.Ct. 1081, 1088-1089 (2014). Therefore, because Longworth's two former attorneys' assistance fell below an objective standard of reasonable representation when they misadvised Longworth about the impact a guilty plea to a reduced charge of second-degree misdemeanor attempted assault would have on his right to own and possess firearms, we find the trial court erred by finding both attorneys performance was not deficient.

*Was Longworth Prejudiced by his Trial Counsel's Deficient Performance?*

{¶ 34} In his second issue presented for review, Longworth argues the trial court also erred by finding he had failed to prove he was prejudiced by his two former attorneys' misadvice about the impact a guilty plea to attempted assault would have on his right to own and possess firearms. That is to say, Longworth argues the trial court erred by finding there was no reasonable probability that, but for his two former attorneys' misadvice, that he would have rejected the state's plea offer and instead taken the matter to trial. To support this claim, Longworth argues the trial court applied a "rejected prejudice standard," overlooked his "perspective and his determinative issue – safeguarding his firearm rights," ignored "unrebutted, legally significant evidence," and considered issues that "do not follow." We again agree with Longworth's claims.

{¶ 35} To show prejudice, the appellant must prove there exists "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Deck*, 12th Dist. Warren No. CA2020-10-066, 2021-Ohio-315, ¶ 25, quoting *Strickland*, 466 U.S. at 694. When applied in the context of a guilty plea, this means the appellant must "demonstrate that there is a reasonable probability that, but

for his counsel's errors, he would not have pled guilty and would have insisted on going to trial." *State v. Parker*, 12th Dist. Butler CA2018-12-229, 2020-Ohio-414, ¶ 10. A "reasonable probability" is a probability that is sufficient to undermine confidence in the outcome. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54, citing *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, ¶ 6. "Prejudice owing to ineffective assistance of counsel cannot be demonstrated by means of conjecture or speculation." *State v. Brown*, 9th Dist. Lorain No. 20CA011618, 2021-Ohio-2540, ¶ 63; *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 40 ("speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim"). Therefore, "[c]onclusory statements that the outcome would have been different, without more, are not enough to carry a defendant's burden on the issue of prejudice." *State v. Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, ¶ 22.

{¶ 36} After a thorough review of the record, we find the trial court erred by finding Longworth had not proven he was prejudiced by his two former attorneys' misadvice. In other words, we find error in the trial court's decision finding there existed no reasonable probability that Longworth would have rejected the state's plea offer and instead taken the matter to trial but for his two former attorneys' misadvice that a guilty plea to a reduced charge of second-degree misdemeanor attempted assault would not subject him to the federal firearms disability imposed under 18 U.S.C. 922(g)(9). This is because, despite the trial court's findings, the only relevant, material evidence on this issue presented at the hearing on Longworth's Crim.R. 32.1 motion to withdraw his guilty plea came from one of Longworth's former attorneys and from Longworth himself.

{¶ 37} Both Longworth and Longworth's former attorney unequivocally testified that Longworth would have rejected the state's plea offer and taken the matter to trial had Longworth not been misadvised about the impact a guilty plea would have on his right to

own and possess firearms. Longworth's testimony, which was uncontradicted, makes clear that this would have been the case regardless of any other considerations that may have been at play. This includes, among other things, the legal fees Longworth would have incurred by taking the matter to trial, the impact that taking the matter to trial could have had on Longworth's family, as well as the risk of subjecting his then wife, Fernbach, to criminal liability if she had falsely accused him of domestic violence.

{¶ 38} In reaching this decision, we note that the time between when Longworth was first made aware that his conviction subjected him to the federal firearms disability imposed under 18 U.S.C. 922(g)(9) and when he eventually moved to withdraw his guilty plea is troubling. The record, however, indicates that Longworth was attempting to reinstate his right to own and possess firearms through other available means. The fact that Longworth's efforts took several years to run their course should not be surprising given the significant backlog the DOJ faced in addressing administrative appeals like Longworth's, nor should Longworth be penalized for seeking redress via alternative means outside the courtroom. Parties are, in fact, encouraged to seek out alternate avenues of redress when possible to avoid overtaxing the state's legal system. Therefore, while the trial court considered this delay significant in that it raised a question as to whether Longworth's "claim now that he would have never entered the plea in the first place" was "just one of a number of strategies he is trying," we take no issue with the fact Longworth did not immediately file a Crim.R. 32.1 motion to withdraw his guilty plea when advised by counsel that there were other potential methods that could be pursued.

{¶ 39} We also take exception with the trial court finding both "the evidence that would have been available to present" against Longworth at a trial on the domestic violence charge, and Longworth's "situation" leading up to a potential trial on that charge, belied Longworth's claim that maintaining his right to own and possess firearms was of "ultimate

importance" to him.  The same is true as it relates to the trial court's decision finding it relevant that there was no mention made at Longworth's plea hearing that he was "pleading to maintain eligibility for access to firearms."  What Longworth may consider to be of "ultimate importance" to him is not necessarily the same as someone else in the same or similar situation.  This holds true even in circumstances such as these where the evidence, when viewed in a light most favorable to the state, would be more than sufficient to secure a domestic violence conviction.  And, while it is true that there was no reference made to the underlying reason behind why Longworth agreed to accept the state's plea offer at Longworth's plea hearing, rarely, if ever, is that information placed on the record.  This is particularly true in circumstances where, like here, discussions as to whether a defendant is willing to accept the state's plea offer are done confidentially, off the record, and behind closed doors between the defendant and his or her trial counsel.

*Did Longworth Establish the Existence of a Manifest Injustice?*

{¶ 40} In light of the foregoing, and because the trial court erred by finding Longworth was not prejudiced by his former counsels' deficient performance, thereby establishing a meritorious ineffective assistance of counsel claim, we find Longworth has also established that a miscarriage of justice would occur if he was not permitted to withdraw his guilty plea to second-degree misdemeanor attempted assault.  That is to say, Longworth has established the existence of a manifest injustice if he was not permitted to withdraw his guilty plea.  Therefore, under the facts and circumstances of this case, and because we find Longworth has established the existence of a manifest injustice, the trial court erred by denying Longworth's Crim.R. 32.1 motion to withdraw his guilty plea.

*Did the Trial Court Err by Allowing Fernbach to Testify?*

{¶ 41} In his third issue presented for review, Longworth initially argues the trial court erred by allowing Fernbach "to testify about her opposition to Longworth's restored firearm

rights." However, as the record indicates, the trial court permitted Fernbach to testify in accordance with Marsy's Law, Article I, Section 10a of the Ohio Constitution. Marsy's Law expanded the rights afforded to crime victims. *State ex rel. Suwalski v. Peeler*, 12th Dist. Warren No. CA2019-05-053, 2020-Ohio-3233, ¶ 10. This includes a crime victim's right "to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated[.]" Ohio Constitution, Article I, Section 10a(A)(3); *see State ex rel. Suwalski v. Peeler*, Slip Opinion No. 2021-Ohio-4061, ¶ 19-21. Therefore, while we agree that Marsy's Law should not be considered an "open spigot," the Rules of Evidence should also not be interpreted to supersede the rights afforded to crime victims under the Ohio Constitution. To hold otherwise would effectively eliminate the expanded rights afforded to crime victims through Marsy's Law. Accordingly, we find no error in the trial court's decision allowing Fernbach "to testify about her opposition to Longworth's restored firearm rights."

*Did the Trial Court Err by Denying Longworth the Opportunity to Present a Rebuttal Witness?*

{¶ 42} Also in his third issue presented for review, Longworth argues the trial court erred by denying him the opportunity to rebut Fernbach's testimony by continuing the matter to another date so that he could call a rebuttal witness. Longworth, however, had already conducted a stringent cross-examination of Fernbach prior to making this request. This cross-examination provided Longworth with ample opportunity to impeach Fernbach's testimony and call into question Fernbach's credibility without the need to call a rebuttal witness. Therefore, contrary to Longworth's claim, we find no error in the trial court's decision denying his request to continue the matter to another date so that he could call a rebuttal witness to the stand. This is particularly true here when considering the matters that would have been testified to on rebuttal were not central to the case. Accordingly, we

find no error in the trial court's decision denying Longworth's request to continue the matter to another date so that he could call a rebuttal witness to the stand.

## Conclusion

{¶ 43} For the reasons outlined above, and finding merit to Longworth's arguments contained within his first and second issues presented for review, Longworth's single assignment of error is sustained. Accordingly, finding merit to Longworth's single assignment of error, the trial court's decision denying Longworth's Crim.R. 32.1 motion to withdraw his guilty plea is reversed and this matter is remanded to the trial court for further proceedings consistent with this Opinion.

{¶ 44} Judgment reversed and remanded.

HENDRICKSON and BYRNE, JJ., concur.