[Cite as *State v. Clark*, 2024-Ohio-734.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                      :

                                           No. 112810

    v.                                                   :

LAMONT CLARK,                                   :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-92-285552-ZA

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Joseph C. Patituce, Megan M. Patituce, and Erin M. Branham, *for appellant.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Lamont Clark ("Clark") appeals the trial court's decision denying his motion to withdraw his guilty plea. We affirm the trial court's decision.

## I.    Facts and Procedural History

{¶2} On June 2, 1993, after a jury trial, Clark was found guilty of murder, in violation of R.C. 2903.02, with a specification stating that he had a firearm on or about his person or under his control.  Clark was sentenced to life in prison, with parole eligibility after 15 years, consecutive to the three-year firearm specification term.  Prior to trial, Clark filed a motion for exculpatory evidence, was granted a hearing, and the state denied the existence of exculpatory evidence. Clark appealed his conviction, which was affirmed by this court in *State v. Clark*, 101 Ohio App.3d 389, 655 N.E.2d 795 (8th Dist.1995) ("*Clark I*").  The Supreme Court declined to accept jurisdiction, and Clark filed a motion to reopen his appeal, which was denied.

{¶3} On December 7, 2015, Clark filed three postconviction motions including a motion for leave to file a delayed motion for new trial; a petition for postconviction relief; and a motion for new trial.  Clark filed these motions citing prosecutorial misconduct by the state, asserting that the state failed to provide exculpatory and material evidence at his trial.  Clark presented medical records containing statements from the victim describing the gunshot as self-inflicted. The state opposed these statements, arguing that the records were immaterial.

{¶4} The trial court scheduled a hearing for March 8, 2016.  Clark and the state explained to the court that an agreement had been reached between them.

The state withdrew its opposition to Clark's motions, and Clark agreed to plead guilty to a reduced charge of involuntary manslaughter. During the plea, the following conversation took place:

COURT: Are you satisfied with the representation you have received from your attorney?

CLARK: Yes, I am.

COURT: Has he explained everything to you and answered all your questions?

CLARK: Yes, he has.

COURT: Do you understand by entering a plea of guilty, you are giving up certain constitutional rights?

CLARK: Yes, I am.

COURT: Do you understand you will be giving up the right to a trial by a jury or to a judge?

CLARK: Yes.

COURT: Do you know you are giving up the right to subpoena or to call witnesses to appear and testify?

CLARK: Yes.

COURT: Do you know you are also giving up your right to have your attorney cross-examine the State's witnesses?

CLARK: Yes.

COURT: Do you know that the State carries the burden of proving your guilt by evidence beyond a reasonable doubt?

CLARK: Yes.

COURT: Do you understand if you decided to go to trial and remain silent, not testify, no one could comment on the fact that you did not testify?

CLARK: Yes.

COURT: Do you understand the offense to which you will be pleading under the new law is a felony of the third degree, punishable by possible term of incarceration in state prison ranging anywhere from 9, 12, 18, 24, 30, or 36 months in state prison and/or up to a $10,000 fine?

CLARK: Yes.

COURT: Do you also know if you serve the time, you may be subject to what they call post-release control for a period of up to three years, that's a parole period after incarceration. If you violated the terms of post-release control, you may look at additional time of up to half the original sentence and/or be charged with a felony of escape by the parole board or department of corrections. If you were violated by a judge while on judicial release, you may look at the imposition of the remainder of your prison term. Do you understand?

CLARK: Yes, I understand.

COURT: Other than what you have heard here today, has anyone promised you anything or threatened you in any way in order to get you to change your plea?

CLARK: No, Your Honor.

COURT: Do you also know that if—now, this case, I don't know if there would have been a civil case brought, but he will be giving up his right to pursue that?

COUNSEL: Yes, that is correct, Your Honor, I have explained that.

COURT: For wrongful imprisonment.

COUNSEL: I have explained that to him. He perfectly understands that he is giving that up.

COURT: How do you plead then to the charge—who is the victim?

STATE: Tonya Banks, Your Honor.

COURT: Charged with involuntary manslaughter in violations of 2903.04(B) which states that—what's the date of the offense?

STATE: July 25, 1992.

COURT: That on July 25, 1992, you did cause the death of another, that is Tonya Banks, as the proximate result of committing or attempting to commit a misdemeanor of any degree, how do you plead?

CLARK: Guilty.

COURT: Let the record reflect the court finds that defendant knowingly, intelligently, with a full understanding of his rights, entered his plea of guilty. Counsel are you satisfied Rule 11 has been complied with?

STATE: Yes, Your Honor.

COUNSEL: Yes, Your Honor.

COURT: Would you articulate the facts of the case, please.

STATE: On July 25, 1992, the defendant Lamont Jones [sic] did fatally shoot the victim, his girlfriend Tonya Banks, inside the bathroom of their apartment on Nye Road in Cleveland. Defendant then drove Ms. Banks to the hospital, where she died several hours later during surgery.

COURT: Anything you would like to say for the record, [Counsel]?

COUNSEL: Not really, Your Honor. Really, I think the fact—normally at this stage I would give some allocution on behalf of the defendant. Mr. Clark has spent 23 years in prison for this, so

whatever he did that day, I think he's more than adequately paid penance for.

COURT: The basis for this motion was?

COUNSEL: Basis for the motion was it was learned last year in April, we obtained the full medical records for Ms. Banks from her brief hospitalization for this and we learned that the prosecutor in the case, Edward Walsh, had removed a number of pages from the medical records which the victim had stated that the gunshot was self-inflicted. I believe that this would undermine confidence in the verdict sufficient to warrant vacating and granting the petition for post conviction release.

COURT: Very good.

STATE: We agree with that, Your Honor. Although we don't believe it absolved Mr. Clark of all responsibility, it undermined our confidence in the verdict, as well.

COURT: Well, lesson to be learned for your office.

STATE: Yes, Your Honor.

COURT: All right. Anything you want to say, Mr. Clark, before I impose a sentence?

CLARK: Not really.

COURT: You're ready to go. Count 1, felony of the third degree, 36 months. You have served all time, you are hereby ordered released forthwith. I'll waive the costs and good luck to you.

Tr. 6 - 12.

{¶5} On April 7, 2023, seven years later, Clark filed a motion to withdraw his guilty plea. In support of Clark's motion, he filed an affidavit from Brenda Banks, the victim's mother. In the affidavit, Banks stated during the investigation,

she spoke with the prosecutor on Clark's case, who stated that Clark lied about what happened in the shooting of her daughter, and that the bullet trajectory evidence proved that Clark killed her daughter. Banks stated that she believes that confiding in the prosecutor regarding her ill feelings towards Clark fueled the narrative that Clark was guilty of murder.

{¶6} Clark also filed an affidavit stating that on the morning of March 8, 2016, the hearing date on his postconviction relief motions, he learned from his family that his mother was in grave condition. Clark recalled that his attorney told him that he would not be released from prison that day, and it was the state's intention to send him back to prison to await further proceedings.

{¶7} However Clark's attorney spoke to the state about a plea agreement in order for Clark to receive a sentence of time served and be release that same day. Clark felt as if he had no choice but to enter a guilty plea if he wanted to see his mother before she died.

{¶8} On May 8, 2023, the trial court denied Clark's motion without a hearing. Clark filed this appeal assigning one error for our review:

1. The trial court erred in denying Mr. Clark's motion to withdraw plea.

## II. Standard of Review

{¶9} We review a trial court's decision to deny a defendant's postsentence motion to withdraw a guilty plea under an abuse-of-discretion standard. *State v.*

*Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 9, citing *State v. Britton*, 8th Dist. Cuyahoga No. 98158, 2013-Ohio-99, ¶ 17.

{¶10} The withdrawal of a guilty plea is governed by Crim.R. 32.1, which states: A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶11} "Manifest injustice is a 'clear or openly unjust act,' * * * 'an extraordinary and fundamental flaw in the plea proceeding.'" *Id*. at ¶ 10, quoting *State v. Nicholson*, 8th Dist. Cuyahoga No. 97873, 2012-Ohio-4591, ¶ 15. "It 'comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.'" *Id*. "Manifest injustice is an 'extremely high standard'; a defendant may withdraw a guilty plea only in 'extraordinary cases.'" *Id*., quoting *State v. Rogers*, 8th Dist. Cuyahoga No. 99246, 2013-Ohio-3246, ¶ 27. "The requisite showing of manifest injustice must be based on specific facts contained in the record or supplied through affidavits submitted with the motion." *Id*., citing *Cleveland v. Dobrowski*, 8th Dist. Cuyahoga No. 96113, 2011-Ohio-6071, ¶ 14. "A self-serving affidavit by the moving party is generally insufficient to demonstrate manifest injustice." *Id*., citing *Richmond Hts. v. McEllen*, 8th Dist. Cuyahoga No. 99281, 2013-Ohio-3151, ¶ 14.

## III.  Law and Analysis

{¶12} In Clark's first assignment of error, he argues that the trial court erred in denying his post-conviction motion to withdraw his guilty plea.  Pursuant to Crim.R. 32.1, Clark had the burden of establishing "manifest injustice" warranting the withdrawal of his guilty pleas.  *Nicholson* at ¶ 15.  Clark states that his plea was not voluntarily entered into because he was coerced and under duress due to his mother's declining condition.  Specifically, he states that he would not have entered a plea deal without the duress of his mother being in the hospital.

{¶13} Clark has not demonstrated that a manifest injustice occurred during the plea proceeding. The record does not reflect Clark's stated reasons for pleading guilty.  It does not demonstrate that he was coerced into agreeing to a plea deal, nor are they examples of a manifest injustice or a clear or openly unjust act that exhibits an extraordinary flaw in the plea proceeding. *See, e.g., State v. Longworth*, 12th Dist. Butler No. CA2021-02-015, 2021-Ohio-4538, ¶ 33 (ineffective assistance of counsel, where an attorney's ignorance of a point of law that is fundamental to the defendant's case combined with the attorney's failure to perform basic research on a point that is fundamental to the plea is an example of a manifest injustice); *State v. Walker*, 1st Dist. Hamilton Nos. C-160764 and C-160863, 2017-Ohio-7493, ¶ 8 (there is an extraordinary flaw in the appellant's plea proceeding because the appellant could not have voluntarily pleaded to not registering as a sex offender because he was not required to register by law); and *State v. Ricks*, 8th Dist.

Cuyahoga No. 86634, 2006-Ohio-4268, ¶16-17 (the trial promised to terminate the appellant's parole if the appellant pleaded guilty; however, the trial court promise was contrary to law, thus invalidating the appellant's plea).

**{¶14}** Clark further argues that prosecutorial misconduct was established and its impact was pervasive. The record reveals that the redaction of the medical records was presented to the court in 2016. That the state agreed that the redaction undermined the confidence of the verdict. Tr. 11. Defense counsel also stated that the act would "undermine confidence in the verdict sufficient to warrant vacating and granting the petition for post conviction release." *Id.* Unfortunately, the state's 1992 prosecutorial misconduct is not relevant to whether there was a fundamental flaw during the plea hearing in 2016. "[R]es judicata applies to any issue that either has been raised or could have been raised on direct appeal, including a claim alleging prosecutorial misconduct." *State v. McKelton*, 12th Dist. Butler No. CA2015-02-028, 2015-Ohio-4228, ¶ 23, citing *State v. Zych*, 12th Dist. Clermont No. CA97-02-012, 1997 Ohio App. LEXIS 4731, (Oct. 27, 1997). An evidentiary hearing was set; however, instead of continuing with the hearing, which would have addressed the issue of prosecutorial misconduct, Clark entered a guilty plea. As a result, our review is limited to whether or not there were defects at the plea hearing. Clark must establish that his plea was involuntary.

**{¶15}** Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest. With respect to the required colloquy, Crim.R. 11(C)(2) provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶16}** The trial court determined that Clark made the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved. Tr. 7 - 8. The trial court informed Clark of and determined that he understood the effect of the plea of guilty, and that the court, upon acceptance of the plea, may proceed with judgment and sentence. Tr. 6, 9 - 10. The trial court informed Clark

and determined that Clark understood that by the plea he was waiving the rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which Clark cannot be compelled to testify against himself. Tr. 6 - 8.

{¶17} The trial court also stated, "Let the record reflect the court finds that defendant knowingly, intelligently, with a full understanding of his rights, entered his plea of guilty." Tr. 9. Additionally, the record does not reflect that Clark informed the court that he was pleading guilty under duress because he was concerned about his mother's impending death. In fact, the trial court asked Clark: "Other than what you have heard here today, has anyone promised you anything or threatened you in any way in order to get you to change your plea?" Tr. 8. To which Clark replied, "No Your Honor." *Id.*

{¶18} Neither Clark's affidavit nor Banks's affidavit demonstrate a manifest injustice occurred during the plea hearing. *See Geraci*, 2015-Ohio-2699, ¶ 9, citing *McEllen*, 2013-Ohio-3151, ¶ 14 ("A self-serving affidavit by the moving party is generally insufficient to demonstrate manifest injustice."). Clark's argument regarding the former prosecutor's misconduct during his trial has no bearing on the proceedings that took place during the plea hearing. Our review is strictly limited to the plea hearing, not prosecutorial misconduct in the original trial. And

the record does not reflect that there was prosecutorial misconduct during the 2016 plea hearing. Therefore, Clark's sole assignment of error is overruled.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR