[Cite as *State v. O'Garro*, 2023-Ohio-634.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-253 |
| | | (C.P.C. No. 07CR-8846) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Nkechi O'Garro, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 2, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Mark R. Wilson* for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Flecha Law, Ltd.*, and *Joshua G. Homer* for appellant. **Argued:** *Joshua G. Homer*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Nkechi O'Garro, appeals from a judgment of the Franklin County Court of Common Pleas denying her postconviction motion to withdraw her guilty plea. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2008, appellant pleaded guilty to permitting child abuse, a third-degree felony pursuant to a plea agreement that allowed her to avoid a conviction of other charges in the indictment. The record reveals that appellant and others intentionally and repeatedly caused serious physical harm to appellant's four-year-old son, including beating and burning the child, and locking the child in a closet without water. The prosecutor related the pertinent facts of the case at the June 30, 2008 plea hearing:

On November 21st, 2007, Columbus police officers were dispatched to 3395 Norwood Street to investigate a domestic violence complaint. Upon arrival they discovered the victim, four-year-old [K.O.] with what appeared to be some type of burn to the mouth area. The burn appeared to be recent. They also saw that the child's right hand was wrapped in a homemade first aid dressing, which was a paper towel.

The child was being examined by Columbus fire medic personnel that had also been dispatched to the residence. They noticed the child had severe bruising about the body in various stages of healing, severe burns to the inside of his mouth, a burn to his right hand and wrist. Nationwide Children's Hospital later found two separate lacerations to his liver and what appears to be a cigarette burn on the top of the child's left foot.

Detectives were called. Responded to the hospital, where they spoke with the victim, who disclosed that Kenneth Deer, who he called Mr. James, burned his hand and his mouth; and his mother, Nkechi Ogarro, beat him with Kenneth's new belt that day and punched him in the stomach. At that time detectives advised the officers at the scene to arrest the child's mother.

* * *

The defendant was interviewed. She stated that she knew the child's burn was bad and that she should have gotten him medical attention but didn't. She stated she was afraid of what would have happened. She also admitted to using a belt to hit the child at times. She stated that sometimes she would hit the child because the co-defendant told her to do so.

(June 30, 2008 Tr. at 5-6.)

{¶ 3} Appellant also told police that Kenneth Deer used duct tape to secure her son's hands behind his back and locked him in a closet. Appellant admitted to police that K.O. asked her for a drink of water while he was locked in the closet, but she refused because she was afraid of what Deer would do if he found out.

{¶ 4} On December 12, 2007, a Franklin County Grand Jury issued an indictment charging appellant with endangering children in violation of R.C. 2919.22, a third-degree felony, permitting child abuse in violation of R.C. 2903.15, a third-degree felony, and domestic violence in violation of R.C. 2919.25, a third-degree felony. On July 1, 2008, appellant entered a plea of guilty as to count 4 of the indictment charging appellant with

permitting child abuse, a third-degree felony. The trial court *nolled* the remaining charges of endangering children and domestic violence. The trial court proceeded to convict appellant of permitting child abuse and impose a two-year prison term.

{¶ 5} Appellant admits that in 2010, shortly after her release from prison, she learned that her conviction could result in deportation or exclusion from admission to the United States. According to appellant, she subsequently contacted an immigration attorney who told her to reapply for a green card and wait for a response from the government. Appellant received a green card without issue, and she did not file a motion to withdraw her guilty plea at that time. Appellant proceeded to travel outside the United States on numerous occasions. However, in November or December of 2019, appellant was detained by immigration officials upon returning to the United States from a trip to Jamaica and she was ordered to appear at a hearing.

{¶ 6} According to appellant, she contacted an attorney in November or December 2019 to discuss her options, but she did not hire attorney Joshua G. Homer at that time. On November 17, 2021, Homer filed the motion to withdraw appellant's guilty plea pursuant to R.C. 2943.031 and Crim.R. 32.1.[1]

{¶ 7} On February 15, 2022, the trial court held an evidentiary hearing on appellant's motion to withdraw her guilty plea. At the hearing, appellant testified that she informed her trial counsel she was not a U.S. citizen minutes before her plea hearing commenced. Appellant signed a guilty plea form that contains the following advisement:

> I ~~am~~ (am not) a citizen of the United States of America. I understand that, if I am not a citizen of the United States, my conviction of the offenses to which I am pleading guilty may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(July 1, 2008 Entry of Guilty Plea at 2.)[2]

---

[1] Appellant's assignments of error do not speak directly to the trial court's ruling on her Crim.R. 32.1 motion to withdraw her guilty plea, and she makes no argument in her merit brief regarding the trial court's ruling on that particular branch of her motion. Accordingly, we shall confine our review to the issues appellant raised in this appeal.

[2] Appellant maintains that her trial counsel struck out the word "am." (Entry of Guilty Plea at 2.)

{¶ 8} Appellant claims she did not read the advisement even though she signed her name in the space on the plea form immediately below the advisement. She also claims that her trial counsel failed to show her the second page of the plea form containing the advisement or otherwise advise her that her guilty plea and conviction may have the consequences of deportation or exclusion from admission to the United States. There is no dispute that the trial court failed to orally advise appellant that her guilty plea may have the consequences of deportation or exclusion from admission to the United States at the Crim.R. 11 hearing on June 30, 2008.

{¶ 9} On March 25, 2022, the trial court issued a decision and judgment entry denying appellant's motion to withdraw her guilty plea. The trial court found that appellant met the four requirements needed to withdraw a guilty plea under R.C. 2943.031, but the trial court concluded the motion was untimely filed. The trial court made the additional findings that appellant could not demonstrate prejudice because of the overwhelming evidence she was guilty of permitting child abuse, and the state would suffer unfair prejudice if appellant were permitted to withdraw her plea 13 years after her conviction.

{¶ 10} With respect to appellant's claim of ineffective assistance of trial counsel, the trial court determined appellant's trial counsel did not provide deficient performance because, at the time of appellant's conviction, legal counsel did not have a duty to advise the defendant that deportation may be a consequence of a guilty plea. The trial court reasoned that such a duty did not exist until 2010, when the United States Supreme Court decided *Padilla v. Kentucky*, 559 U.S. 356 (2010). The trial court refused to apply *Padilla* retrospectively. The trial court also found that appellant failed to show prejudice and that she provides no support for her claim, and would not have pleaded guilty if properly advised by trial counsel.

{¶ 11} Appellant timely appealed to this court from the March 25, 2022 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant assigns the following as trial court error:

> [1.] Denying a motion based on O.R.C. 2943.01(D) for being untimely is in violation of the plain language of the statute.
>
> [2.] In the alternative of the court finding the timeliness consideration lawful, Ms. O'Garro timely filed her motion.

[3.] The trial court abused its discretion by applying an erroneous prejudice standard; the erroneous prejudice finding is harmful error.

[4.] The trial court erred by holding that Ms. O'Garro's prior attorney was not required to advise her of the immigration consequences of her guilty plea.

(Sic passim.)

### III. STANDARD OF REVIEW

{¶ 13} An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse of discretion standard. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 32, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus, and *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus. The same abuse of discretion standard of review applies to the trial court's decision on the motion whether it is predicated on R.C. 2943.031 or Crim.R. 32.1. *Francis* at ¶ 32. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

### IV. LEGAL ANALYSIS

#### A. Assignments of Error

#### 1. First and Second Assignments of Error

{¶ 14} Because appellant's first and second assignments of error argue the trial court abused its discretion in concluding that appellant failed to timely file her R.C. 2943.031(D) motion to withdraw her guilty plea, we shall consider these two assignments of error jointly.

{¶ 15} R.C. 2943.031(D) provides in relevant part:

Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty * * * and enter a plea of not guilty * * *, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded

guilty * * * may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.[3]

**{¶ 16}** "R.C. 2943.031(D)'s explicit language mandates that a trial court set aside a judgment of conviction and allow a defendant to withdraw his guilty plea if the defendant satisfies four requirements." *State v. Muhumed*, 10th Dist. No. 11AP-1001, 2012-Ohio-6155, ¶ 9, citing *State v. Weber*, 125 Ohio App.3d 120, 126 (10th Dist.1997). "The four requirements to be demonstrated are: (1) the court failed to provide the defendant with the advisement contained in R.C. 2943.031(A); (2) the advisement was required; (3) the defendant is not a United States citizen; and (4) the offense to which the defendant pled guilty may result in deportation under the immigration laws of the federal government." *Id.*

**{¶ 17}** Appellant first contends that the trial court abused its discretion in considering appellant's failure to file her motion within a reasonable time as a reason for denying her motion. We disagree.

**{¶ 18}** We acknowledge that there is no specific time requirement in the language of the statute. However, in *Francis*, the Supreme Court of Ohio held that a trial court has the discretion to consider and weigh many factors, including timeliness and prejudice, when considering a motion to withdraw a plea based on the court's failure to provide the R.C. 2943.031(A) advisement. *State v. Walker*, 10th Dist. No. 15AP-1107, 2017-Ohio-511, ¶ 21, citing *Francis* at ¶ 40.

**{¶ 19}** Appellant testified she was released from prison in 2009 and that sometime in 2010 she learned her conviction may result in her being subject to deportation or exclusion from admission to the United States. Appellant filed her motion to withdraw her guilty plea on November 17, 2021, 11 years later. Relying on the rule of law in *Francis*, the trial court determined that appellant's motion was untimely filed because appellant waited 11 years to file the motion after learning her guilty plea and subsequent conviction may result in her being subject to deportation or exclusion from admission to the United States.

---

[3] R.C. 2943.031(A) requires the trial court to orally recite the following advisement:
"If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

{¶ 20} Appellant asks this court to ignore the decision of the Supreme Court of Ohio in *Francis*, and find that the trial court abused its discretion by considering the timeliness of her motion. This court has no authority to ignore applicable precedent from the Supreme Court. *State v. Reyes*, 12th Dist. No. CA2015-06-113, 2016-Ohio-2771, ¶ 21 (We must follow the binding precedent in *Francis*, wherein the Supreme Court "clearly stated timeliness is a relevant consideration in determining whether to grant a R.C. 2943.031(D) motion to withdraw."). Accordingly, we find that the trial court did not abuse its discretion in considering the timeliness of appellant's statutory motion to withdraw her guilty plea as a factor weighing heavily against the motion.

{¶ 21} Appellant argues alternatively that the trial court abused its discretion in using the date when appellant first learned of the possible consequences of the plea in calculating the length of appellant's delay in moving the trial court to withdraw her guilty plea. Appellant maintains that the date when she was detained by immigration officials and summoned to appear in court is the date the trial court should have used in measuring the delay. In other words, appellant argues that the date when she suffered actual consequences as a result of her guilty plea is the operative date for timeliness purpose, rather than the date when appellant admittedly learned of the possible consequences. We disagree.

{¶ 22} With regard to the timeliness of the defendant's motion, the Supreme Court stated that "[t]imeliness * * * is just one of many factors that the trial court should take into account" in determining whether to grant the motion. *Francis* at ¶ 40. The court explained that timeliness of the motion is a relevant consideration because "[t]he more time that passes between the defendant's plea and the filing of the motion to withdraw it, the more probable it is that evidence will become stale and that witnesses will be unavailable. The state has an interest in maintaining the finality of a conviction that has been considered a closed case for a long period of time." *Id.*

{¶ 23} The *Francis* court also cautioned that the "timeliness" of a motion does not require a bright-line rule and instead depends on the particular facts of each case. *Id.* at ¶ 42. For example, timeliness would not be a factor in support of denial when "the immigration-related consequences of the plea and resulting conviction did not become evident for some time after the plea was entered." *Id.*

**{¶ 24}** In *Francis*, the trial court denied defendant's motion to withdraw the guilty plea without an evidentiary hearing, and the court of appeals affirmed due to defendant's nine-year delay in filing the motion. In reversing the court of appeals, the Supreme Court explained that "in some cases even a considerable delay in filing the motion to withdraw will not be a factor supporting denial of the motion, such as when the immigration-related consequences of the plea and resulting conviction did not become evident for some time after the plea was entered." *Id*. at ¶ 42. The Supreme Court remanded the matter for the trial court to hold an evidentiary hearing. *Id*. at ¶ 57.

**{¶ 25}** Here, the trial court held an evidentiary hearing on the motion, heard appellant's testimony and admitted evidence, including appellant's affidavit. Appellant testified that she was released from prison in 2009, she learned of the possible consequences of her guilty plea in 2010, and she contacted two different immigration attorney's regarding her options. According to appellant, the first attorney told her that her green card had not been "flagged," but her options were either to leave the United States voluntarily or remain in the country after her green card expired. (Feb. 15, 2022 Tr. at 6.) Appellant testified that the second immigration attorney she contacted advised her to reapply for a green card and wait for a response from the government. Appellant testified that she subsequently received a new green card without issue.

**{¶ 26}** Under the particular facts of this case, there is no question that the possible impact of appellant's guilty plea and conviction became evident to appellant in 2010 when she learned of the possible consequences and contacted two different immigration attorneys about her options. Even if the trial court believed that neither of these attorney's advised appellant to file a motion to withdraw her plea, appellant's own testimony establishes that in 2010 appellant knew that her 2008 conviction may subject her to deportation or exclusion from admission to the United States, and she knew the trial court had not orally informed her of those consequences.

**{¶ 27}** We do not believe *Francis* stands for the proposition that the timeliness of a statutory motion to withdraw a guilty plea must be calculated from the date when defendant is threatened with or suffers actual consequences of the plea. Such a rule would encourage delay and increase the potential prejudice to the state. It is unfairly prejudicial to the state to allow appellant to wait to file her motion until the immigration service commences

deportation proceedings when she has had full knowledge such proceedings are likely or possible for years and the evidence supporting a conviction is growing stale. In this case for example, appellant's motion was filed 14 years after the criminal conduct occurred, the victim is now and adult living in Washington state, and witness testimonies and other relevant evidence may now be unobtainable.

{¶ 28} For the foregoing reasons, we hold that the trial court did not abuse its discretion when it found that, under the particular circumstances of this case, an 11-year delay in filing the motion was unreasonable. Moreover, the trial court did not rely exclusively on appellant's untimely filing as the basis for denying the motion. The trial court concluded that other factors weighed against the motion, such as the prejudice to the state arising from the lengthy delay, the overwhelming evidence of appellant's guilt, and the likelihood appellant would have received a much longer prison sentence if she had insisted on going to trial.

{¶ 29} The trial court also considered the impact on the victim in this case if appellant were permitted to withdraw her guilty plea and proceed to trial. The trial court noted that in a 2015 custody case, the Franklin County Juvenile Court awarded legal custody of K.O. to appellant's former husband and his wife who were living in Washington state. After reviewing the juvenile court decision, the trial court concluded that K.O would suffer "significant prejudice if the plea is withdrawn and this matter is reactivated and set for trial." (Mar. 25, 2022 Decision & Entry at 10.)[4] Specifically, the trial court noted that the juvenile court found that K.O. was "the victim of consistent and severe abuse," and that K.O. had been diagnosed with Post-Traumatic Stress Disorder, among other disorders. *Id.* The trial court decision provides that a psychologist who observed appellant's three supervised visits with K.O. opined that K.O. is not bonded with his mother, that these visits caused K.O. significant anxiety and trepidation, and further visitation would be therapeutic for K.O.

{¶ 30} In this appeal, appellant has not alleged that the trial court erred when it considered the impact on the victim if she were permitted to withdraw her guilty plea. In our view, the facts recited by the prosecutor at appellant's Crim.R 11 hearing standing alone, provide ample support for the trial court's finding that further serious harm to the victim

---

[4] Appellant has not objected or otherwise contested the content of the juvenile court decision in this case.

would occur if appellant were permitted to withdraw her guilty plea so many years after the crimes were committed.

{¶ 31} Appellant's first and second assignments of error are overruled.

## 2. Third and Fourth Assignments of Error

{¶ 32} Appellant argues in her third and fourth assignments of error that her guilty plea was the result of ineffective assistance of trial counsel. Accordingly, we shall consider them together.

{¶ 33} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "When a defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test set out in *Strickland*." *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, ¶ 14, citing *Xie* at 524.

{¶ 34} In *State v. Galdamez*, 10th Dist. No. 14AP-527, 2015-Ohio-3681, this court explained that a trial court should take certain factors into consideration when ruling on a motion to withdraw a guilty plea based on a claim of ineffective assistance of counsel, including: (1) whether the timing of the defendant's motion to withdraw plea bolsters his assertion that he would not have entered the plea had he received competent advice from counsel; (2) whether a guilty plea automatically subjects the defendant to deportation, thus making it rational for a defendant to take his chances at trial rather than subject himself to automatic deportation; and (3) the likeliness of a favorable outcome at trial had the defendant not pleaded, as it would not be rational for a defendant to forgo a plea bargain and go to trial if a defendant faces overwhelming evidence of his guilt. *Id*. at ¶ 37-42.

{¶ 35} By her fourth assignment of error, appellant argues that the trial court committed reversible error when it failed to apply the *Padilla* case in making the

determination whether the performance of appellant's trial counsel during the plea process fell below an objective standard of reasonableness and professional norms. We disagree.

{¶ 36} As set out above, R.C. 2943.031(A) requires a trial court give the defendant the proper advisement during the plea colloquy when such and advisement is warranted. R.C. 2943.031(D) further provides that, "[u]pon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty * * * and enter a plea of not guilty * * *, if, * * * the court fails to provide the defendant the advisement." In *Padilla*, the U.S. Supreme Court concluded that trial counsel also has a duty under the appropriate circumstances, to inform the defendant that a guilty plea will subject the accused to automatic deportation. *Id.* at 362. The failure of trial counsel to do so may permit the defendant to withdraw the guilty plea based on a claim of ineffective assistance of trial counsel during the plea process. *Id.* at 383.

{¶ 37} In *Chaidez v. United States*, 568 U.S. 342 (2013), the U.S. Supreme Court held that *Padilla* could not be applied retroactively to convictions that had become final before March 31, 2010, when the case was decided, because the *Padilla* case announced a "new rule" that altered the law of most jurisdictions. *Id.* at 345-53. Appellant has predicated her claim that her trial counsel provided ineffective assistance on *Padilla*, even though her conviction became final well before *Padilla* was decided. This court, however, has previously refused to entertain a claim of ineffective assistance predicated on the *Padilla* case where movant's conviction became final prior to March 31, 2010, the date the U.S. Supreme Court decided *Padilla*. *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 15, citing *Chaidez*. We shall not depart from our precedent in this case.

{¶ 38} Based on the applicable case law, there is no merit in appellant's contention that her trial counsel owed her a duty to personally inform appellant that her guilty plea may result in deportation or exclusion from admission to the United States. Moreover, appellant admitted that she first informed trial counsel of her citizenship just minutes prior to the plea hearing. The record also shows that appellant acknowledged on the written plea form that she was not a citizen of the United States and she signed the plea form immediately below the written advisement that her guilty plea "may have the consequences of deportation [or] exclusion from admission to the United States." *Spivakov* at ¶ 2.

Appellant's signature immediately below the advisement belies her claim that trial counsel failed to show her the second page of the plea form containing the advisement.

{¶ 39} Based on the foregoing, appellant has not shown that trial counsel's performance during the plea process fell below an objective standard of reasonableness under then existing professional norms.

{¶ 40} Even if it were permissible to apply *Padilla* retrospectively and find fault with appellant's trial counsel for failing to orally advise appellant a guilty plea may have the consequences of deportation, or exclusion from admission to the United States, in order to prove prejudice under the *Strickland* standard appellant must establish there was a reasonable possibility that, but for counsel's failure, she would not have pleaded guilty and insisted on going to trial. In order to establish prejudice in the context of a guilty plea, appellant "must do more than present 'post hoc assertions * * * about how he would have pleaded but for his attorney's deficiencies.' " (Emphasis deleted.) *Romero* at ¶ 28, citing *Lee v. United States*, ___ U.S. ___, 137, S.Ct. 1958 (2017).

{¶ 41} Here, appellant waited 13 years after her conviction to make her claim of ineffective assistance. Appellant admittedly knew of counsel's error in 2010, but waited 11 more years to file her motion. Appellant's discussion with immigration attorneys in 2010 regarding a course of action does not excuse appellant's continued delay given the fact that appellant learned of the possible consequences of her guilty plea in 2010 and she knew her counsel failed to orally advise her of those consequences before she entered her plea. Similarly, the fact that she obtained a green card in 2010 does not alter the fact that the immigration attorneys she contacted confirmed that her conviction could lead to deportation or exclusion from the United States. Even after learning the possible impact of her plea in 2019, appellant waited another two years before filing her motion to withdraw her guilty plea. Though appellant blames her attorneys for the additional delay, she admitted that her lawyer mentioned the possibility of a motion to withdraw her guilty plea, but elected to pursue remedies with the immigration authorities. It is unfair to the state for appellant to simply wait and pursue other remedies while the state's evidence of appellant's guilt grows staler. In short, we find that the timing of appellant's motion to withdraw her guilty plea belies her claim that she would not have pleaded guilty had she been advised of the potential impact on her immigration status. *Galdamez* at ¶ 37-42.

{¶ 42} The record shows that the state had gathered overwhelming evidence of appellant's guilt of permitting child abuse, including appellant's inculpatory statements to police. The trial court advised appellant at the plea hearing that the maximum prison term for the offense was five years. Appellant admitted in her affidavit that her trial counsel cautioned her, she "would probably be given a maximum sentence of five years" if she were found guilty at trial, rather than the two-year prison term she was to receive if she pleaded guilty. (Nov. 17, 2021 Appellant's Aff., Ex. B, at 2.) A guilty plea permitted appellant to avoid the possibility of a lengthy prison term. Moreover, appellant's motion to withdraw her guilty plea does not assert any specific defense she intends to assert to the charge of permitting child abuse. Accordingly, even if we were to find that trial counsel's failure to advise appellant of the consequences of her plea constitutes deficient performance, the record does not support appellant's claim that she would not have pleaded guilty and insisted on going to trial if properly advised by trial counsel. Thus, appellant cannot prove prejudice as is required under the second prong of the *Strickland* analysis.

{¶ 43} Appellant nevertheless contends in her third assignment of error, the trial court erred by failing to apply the *Lee* case in assessing prejudice. *Lee* recognizes that under certain circumstances a defendant might reject a plea and prefer "taking a chance at trial" despite "[a]lmost certai[n]" conviction. (Emphasis deleted.) *Id*. at 1968-69. The *Lee* court concluded that when the defendant's primary concern is retaining U.S. citizenship, the likelihood of conviction is not relevant consideration in ruling on defendant's motion to withdraw a guilty plea. *Id*. at 1969.

{¶ 44} In her affidavit, appellant averred as follows:

> I now know that my conviction will cause my deportation, contrary to what [the trial counsel] told. If I had known that I would lose my green card and that my deportation was a sure consequence if I pleaded guilty to the permitting child abuse before pleading guilty I absolutely would not have pleaded guilty, I would have taken my chances and gone to trial. At that time I had had my green card for five years and my dad also had a green card and lived in the United States. I would not have just thrown my green card away without doing everything to fight to keep it; staying together with my family was very important to me.

(Appellant's Aff., Ex. B, at 3.)[5]

{¶ 45} Appellant argues that pursuant to *Lee*, the likelihood of conviction is irrelevant. *Lee* is distinguishable.

{¶ 46} In *Lee,* defendant repeatedly told his counsel any plea deal was contingent on staying in the U.S., and his counsel erroneously told him there would be no threat of deportation occasioned by the plea. Here, appellant has admitted that she informed her trial counsel she was not a United States citizen minutes prior to the plea hearing. She testified she had met with her legal counsel on two prior occasions while she was in jail, awaiting trial, but she never mentioned her citizenship. Though she now claims that her counsel failed to show her the second page of the plea form containing the relevant advisement, her signature immediately below the advisement belies that claim.

{¶ 47} In our view, appellant did not provide persuasive evidence, either in her affidavit or at the hearing, to support a finding she would not have pleaded guilty and would have insisted on going to trial if she were properly advised by trial counsel of the possibility of deportation or exclusion from admission to the U.S. If appellant's primary consideration was her immigration status, she would have insisted that her plea deal was contingent on keeping her green card. Her failure to do so suggests that serving the shortest prison term for committing very serious crimes against her own child was her priority, not keeping her green card. Appellant has not claimed that her relatives living in the U.S. would be prevented from visiting her if she were deported. Nor does she claim that her relatives in the U.S. rely on her for financial support, shelter or healthcare. She lost physical custody of her son after her arrest and she subsequently lost legal custody of K.O. K.O. is now an adult living in Washington state. By her own admission, appellant regularly travels outside the United States and she has relatives in Jamaica.

{¶ 48} On this record, it was not unreasonable for the trial court to disbelieve appellant's post hoc assertion that she would not have pleaded guilty, but for her attorney's deficiencies lacks credibility. *Romero* at ¶ 28. Accordingly, we hold that the trial court did

---

[5] In the March 25, 2022 decision, the trial court noted: "It is undisputed that there are no removal proceedings pending against O'Garro at this time. The proceeding was dismissed and, as the date of the hearing in this matter, had not been refiled." (Decision & Entry at fn. 2.)

not err in denying her motion to withdraw her guilty plea based on a claim of ineffective assistance of trial counsel.  Appellant's third and fourth assignments of error are overruled.

## V.  CONCLUSION

{¶ 49}  Having overruled appellant's first, second, third, and fourth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, P.J., and MENTEL, J., concur.

_____